Phill SILVER, as a citizen of the United States and of the State of California, and as an elector and registered voter of the County of Los Angeles, on his own behalf and on behalf of all other citizens, electors and registered voters of the Fourth District of the State Board of Equalization similarly situated, Plaintiff,

v.

Frank M. JORDAN (succeeded by H. P. Sullivan, as Secretary of State of California), in his official capacity as Secretary of State of California; Edmund G. Brown, in his official capacity as Governor of the State of California; the Senate of the State of California; the Assembly of the State of California; The Legislature of the State of California; Thomas Lynch, in his official capacity as Attorney General of the State of California; George R. Reilly, in his official capacity as Member of the State Board of Equalization of the First District; John W. Lynch, in his official capacity as Member of the State Board of Equalization of the Second District; Paul R. Leake, in his official capacity as Member of the State Board of Equalization of the Third District; Richard Nevins, in his official capacity as member of the State Board of Equalization of the Fourth District and Alan Cranston, in his official capacity as controller of the State of California and as Member of the State Board of Equalization, Defendants.

No. 66–1494.

United States District Court,
C. D. California.

Dec. 14, 1970.

Phill Silver, in pro. per.

Thomas C. Lynch, Atty. Gen. of California, Sanford N. Gruskin, Deputy Atty. Gen., and Henry G. Ullerich, Deputy Atty. Gen., for defendants.

ORDER

1.  DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INTERLOCUTORY JUDGMENT AND APPLICATION FOR INJUNCTIVE RELIEF, UPON SECOND AMENDED COMPLAINT.

2.  GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT PREJUDICE TO FILING NEW ACTION AFTER CLOSE OF CALIFORNIA STATE LEGISLATURE'S 1971 REGULAR SESSION.

Before BARNES, Circuit Judge and CRARY and HAUK, District Judges.

HAUK, District Judge.

The above entitled action came on for hearing on Tuesday, November 17, 1970,

at 2:00 P.M., in the Courtroom of the United States Court of Appeals for the Ninth Circuit, 16th Floor, United States Courthouse, 312 North Spring Street, Los Angeles, California, before the three-judge Court heretofore designated and appointed herein, upon Plaintiff's Second Amended Complaint in which Plaintiff as a citizen, elector and voter on his own behalf and on behalf of all citizens, electors and voters similarly situated, is seeking a declaration that the California State Board of Equalization is improperly constituted in that the present apportionment of the five districts thereof is illegal and unconstitutional. Plaintiff also seeks injunctive relief, asking this Federal Court to limit the terms of the Members of the State Board of Equalization to two years by restraining the California Secretary of State from issuing any further Certificate of Election for the offices of Members of the Board of Equalization for a term longer than two years, or in the alternative, from holding any further elections for such offices, until reapportionment of the Board's districts has been enacted by the California State Legislature. About a month after filing of the Second Amended Complaint, Plaintiff filed his Motion for a Preliminary Interlocutory Judgment seeking to obtain the aforesaid injunctive relief before trial, and Defendants have filed their Motion to Dismiss the Second Amended Complaint.

After thorough consideration of the aforesaid Second Amended Complaint and respective Motions of Plaintiff and Defendants, the Points and Authorities submitted in support thereof and in opposition thereto, and the argument of counsel at the hearing, the Motions were taken under submission. Now, after due consideration thereof, the Court renders its Decision, Findings of Fact, Conclusions of Law and Order denying Plaintiff's Motion for a Preliminary Interlocutory Judgment, together with the injunctive relief sought therein; and granting Defendants' Motion to Dismiss the Second Amended Complaint without

prejudice to the filing of a new action by Plaintiff after the close of the 1971 Regular Session of the California State Legislature.

Helpful to the Court's consideration of these matters is a review of the facts herein, taking up the history of this litigation from the beginning, the actions of the California State Legislature and the California Supreme Court to date, and promised action by the Legislature in 1971, taking judicial notice, of course, that the 1960 Federal Census figures will shortly be superseded by the 1970 Federal Census figures which will be available in early 1971.

## FACTS

### History of the Litigation Herein

1. On July 21, 1966, Phill Silver, Plaintiff herein, and one Pat Galati filed a joint petition with the California Supreme Court requesting that Court to require defendants herein to constitutionally redistrict the districts of the State Board of Equalization by applying the latest population figures available and to limit the term of office of members elected in the November 8, 1966, general election to one year.

2. On August 31, 1966, the California Supreme Court denied the petition with the following minute order:

"The California Constitution provides (in Sec. 9, Art. XIII) that members of the State Board of Equalization shall be elected at each gubernatorial election. Circumstances do not compel overriding this constitutional plan by limiting the terms of the members of the Board to be elected in 1966. The petition is therefore denied without prejudice to the right to seek similar relief if the Legislature has not enacted a new districting measure for the State Board of Equalization by the close of its 1969 session. (See Silver v. Brown, 63 Cal.2d 316, 318 [46 Cal.Rptr. 531, 405 P.2d 571]) This order is final forthwith." Galati et al., etc. v. Jordan et al., etc., Sac. 7757, 65 A.C.Minutes, p. 2, (August 31, 1966).

3. On September 19, 1966, Silver filed his original complaint here in Federal Court for a declaration that the apportionment of the existing districts of the State Board of Equalization violated the California Constitution and deprived plaintiff of the equal protection of the laws accorded by the Fourteenth Amendment to the United States Constitution. Plaintiff for himself and as representative of citizens, electors and taxpayers similarly situated in the class action, requested a three-judge court and an injunction against the Secretary of State from issuing any certificates of election for the office of Members of the State Board of Equalization for a term of more than *one* year.

4. On October 18, 1966, the matter came on for hearing before our three-judge court upon Plaintiff's order to show cause why we should not compel the Legislature to redistrict the districts of the State Board of Equalization, and why the terms of Members of the Board to be elected on November 8, 1966, should not be limited to a term of *two* years. Upon the Court's own motion, Plaintiff's complaint was dismissed with leave to amend and a further hearing was set for November 4, 1966.

5. On October 24, 1966, plaintiff filed a first amended complaint for declaratory and injunctive relief.

6. On November 4, 1966, we heard oral arguments, prepared written findings and conclusions, and issued an order which provided in substance (263 F. Supp. 627):

(1) That we had jurisdiction over the parties and the subject matter;

(2) That Defendants' motions to dismiss were denied;

(3) That Plaintiff's application for a preliminary injunction was denied without prejudice to its being renewed and all proceedings were continued until October 27, 1967;

(4) That attorneys for Plaintiff and Defendants were to file status reports at least 20 days prior to October 27, 1967, outlining for the court the action of Defendants in reapportioning and redistricting the State Board of Equalization during the 1967 session of the Legislature; with all motions, affidavits, points and authorities, and other papers to be considered on October 27, to be filed at least 20 days prior to said date.

7. On October 27, 1967, at the further hearing we considered the status reports filed by the parties; noted that the State Legislature was meeting in Special Session on November 6, 1967, to take up reapportionment of the California Congressional Districts; reviewed the minute order of the California Supreme Court, dated August 31, 1966, supra, 65 A.C.Minutes, p. 2; and issued a further order which provided in substance (274 F.Supp. 882):

a. All matters and proceedings herein are taken off calendar subject to being reset for hearing by any party upon 90 days notice thereof;

b. At least 20 days prior to any such further hearing, the attorneys of record shall serve and file status reports describing the actions and activities of the State Supreme Court and the State Legislature in reapportioning and redistricting the State Board of Equalization.

8. Some 26 months later, on January 30, 1970, Plaintiff filed a petition with the California Supreme Court requesting that Court to take jurisdiction of the case and to enjoin the parties who are Defendants here in our Federal Court from any act necessary to the holding of elections for members of the State Board of Equalization until the State Board shall have been constitutionally reapportioned by the State Legislature.

9. On February 18, 1970, the California Supreme Court entered the following minute order:

"Sac. 7858—Silver, etc. v. Jordan, etc. et al. The petition in the above entitled proceeding seeking reapportionment of the State Board of Equalization was not filed until more than four and one-half months after the ad-

journment of the regular 1969 session of the Legislature. In view of the commencement of the primary election procedure on February 24, 1970, the filing of the petition was not timely. Accordingly, the petition is denied. Peters, J., is of the opinion that the petition should be granted." 2 Cal. 3d Minutes, p. 9 (February 18, 1970).

10. On July 8, 1970, Judge Hauk in sitting as a single Judge herein on a procedural matter, on his own motion issued a Notice of Hearing on August 3, 1970, to show cause why the action should not be dismissed for lack of prosecution, some 33 months having elapsed without any activity herein by Plaintiff.

11. On August 3, 1970, Plaintiff's request for permission to file a Second Amended Complaint was granted with the order that it be filed no later than September 14, 1970, and the matter was continued for further hearing to September 21, 1970.

12. Plaintiff then filed the Second Amended Complaint, again seeking a declaration that the State Board of Equalization districts be reapportioned and also seeking to enjoin the Secretary of State from issuing Certificates of Election following the general election on November 3, 1970, for the office of Members of the State Board of Equalization for a term of more than two years or in the alternative from issuing any Certificates of Election at all until reapportionment of the Board's district by the Legislature.

13. On September 21, 1970, Judge Hauk held a further hearing on the order to show cause re dismissal for lack of prosecution. After oral argument, Defendants were granted permission to file a written motion to dismiss or in the alternative for an order taking the matter off calendar subject to being reset upon 90 days notice, such motion to be filed by October 6, with Plaintiff's response, if any, to be filed by October 12, and the matter was continued for further hearing upon said written motions to October 20.

14. On October 6, 1970, Defendants filed an Answer to the Second Amended Complaint and a Notice of Motion and Motion to Dismiss the Action or in the alternative that the Court abstain from exercising equitable jurisdiction by ordering that all matters remain off calendar until the close of the 1971 session of the California Legislature, and in any event that the trial not be set prior to January 20, 1971. Whereupon Plaintiff filed his Motion for a Preliminary Interlocutory Judgment seeking to obtain before trial the injunctive relief prayed for in the Second Amended Complaint outlined in paragraph 12 above.

*State Action To Date*

1. As we have noted in our discussion of the history of this litigation, the California Supreme Court denied Plaintiff's 1966 Petition without prejudice to his seeking relief if the Legislature should not have enacted a new districting measure for the Board of Equalization by the closing of its 1969 session. 65 A.C.Minutes, p. 2 (August 31, 1966).

2. In its 1969 Regular Session (January 6–August 8), the State Legislature did engage in some very definite activity. In the Assembly the Bill known as A.B. 2230, covering the reapportionment of the State Board of Equalization districts, based upon the 1960 Federal Census, was introduced by the Chairman of the Committee on Elections and Constitutional Amendments, passed that Committee on May 22, 1969, with a favorable recommendation and was thereafter passed by the full Assembly on June 10, 1969. (Affidavit of Paul Priolo, Chairman of the Assembly Committee on Elections and Constitutional Amendments, October 5, 1970; 3 Journal of the Assembly (1969) 4788). In the Senate this same Bill, A.B. 2230, was on July 2, 1969, referred to the Committee on Elections and Reapportionment which, in turn, referred it to the Rules Committee where it was reported out to the full Senate on August 8, 1969, but without any recommendation, as a result of which it died. (3 Journal of the Senate (1969) 5655; Priolo Affidavit, *supra*; Affida-

vit of James E. Whetmore, Chairman of the Senate Committee on Elections and Reapportionment, October 2, 1970).

3. During the 1970 Regular Session of the Legislature (January 5–August 21) once again there was considerable activity in both Houses. Pursuant to House Resolution No. 394 introduced by Assemblyman Priolo on July 23, 1969, both the Assembly and the Senate began initial preparations for the consideration of Board of Equalization reapportionment in the 1971 session based upon the 1970 Federal Census figures which, presumably, will be made public sometime in December 1970 or January 1971. Among other things, the two relevant Committees—the Assembly Committee on Elections and Constitutional Amendments and the Senate Committee on Elections and Reapportionment—employed consultants, conferred with representatives of the Federal Bureau of the Census, gathered miscellaneous information and undertook studies of the various alternatives for reapportioning the Board of Equalization districts. (Priolo and Whetmore Affidavits, *supra*).

4. In the meantime Plaintiff, having done nothing in either the State or Federal Courts for more than 26 months, went to the California Supreme Court for reapportionment, which was naturally denied because untimely. Silver, etc., v. Jordan, etc., et al., 2 Cal.3d Minutes, p. 9 (February 18, 1970).

*State Action in Future*

Both Assemblyman Priolo, as Chairman of the Assembly Committee on Elections and Constitutional Amendments, and Senator Whetmore, Chairman of the Senate Committee on Elections and Reapportionment, have by their sworn testimony stated their firm intentions to introduce and carry forward promptly, in the 1971 Regular Session of the Legislature, bills which will redistrict and reapportion the State Board of Equalization upon the basis of the 1970 Federal Census figures, along with the California State Senate, the California State Assembly, and the United States Congressional Districts in California. (Priolo and Whetmore Affidavits, *supra*).

## DENIAL OF PRELIMINARY INTERLOCUTORY JUDGMENT AND INJUNCTIVE RELIEF SOUGHT THEREIN

In the Second Amended Complaint, Plaintiff prays for an injunction restraining the California Secretary of State from issuing any further Certificates of Election for the Offices of Members of the State Board of Equalization for a term of more than two years until such time as the California Legislature reapportions the State Board of Equalization on a "one man, one vote" basis. We decline to give this extraordinary relief for a number of reasons.

The Supreme Court in its long line of reapportionment cases has consistently held that the District Court has broad discretion in fashioning appropriate remedies. Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965); Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Many factors must be taken into consideration, the most important of which is that the District Court should stay its hand when it appears that the state legislature will perform its duty.

"Since primary responsibility for legislative apportionment rests with the legislature itself, and since adequate time exists in which the Maryland General Assembly can act, the Maryland courts need feel obliged to take further affirmative action only if the legislature fails to enact a scheme in timely fashion after being afforded a further opportunity by the courts to do so." 377 U.S. at 675, 84 S.Ct. at 1440.

An examination of the affidavits submitted by the Defendants discloses that the California State Legislature and State Supreme Court have been making good faith attempts to reapportion the State Board of Equalization. As we have

noted, a redistricting plan passed the Assembly on June 10, 1969, but the 1969 Legislative Session ended before the Senate could act on the proposal. This inaction was in part apparently due to the desire of both Houses to wait for the 1970 Federal Census figures, which we take judicial notice should now be completed and published shortly. Even in 1969 it was widely known that there had been substantial shifts as well as tremendous increases in population throughout California.

It further appears from those affidavits that bills will be introduced during the 1971 Regular Session of the Legislature which will reapportion the California State Legislature, the United States Congressional Districts and the State Board of Equalization. In the event the State Legislature next year fails to reapportion the State Board of Equalization after it shall have had this opportunity to do so, Plaintiff may again turn to the courts, both State and Federal, for appropriate relief. He could even at that time seek and obtain a special election if the facts warrant.

Additionally, it should be noted that this case had been dormant for almost three years and would still be dormant had not the Court put it back on calendar on our own motion by Order to Show Cause why it should not be dismissed for lack of prosecution. On July 8, 1970,

when this Order to Show Cause was issued, it was obvious that no relief could possibly be granted for the 1970 General Election even if we were to determine that the State Board of Equalization was a political body to which the "one man, one vote" requirement would apply.[1] Moreover, Plaintiff has been dilatory in failing to proceed expeditiously with the result that this action which was filed originally in September, 1966, seeking reapportionment of the State Board of Equalization on the basis of the 1960 Federal Census figures, is by reason of Plaintiff's failure to take any action whatsoever for more than 26 months, still before us at a time when the 1970 Census figures are on the threshold of publication and should obviously be the basis for any redistricting or reapportionment. The proper time for Plaintiff to have sought relief in this case was immediately after the close of the 1969 Regular Session of the Legislature, even as the California Supreme Court suggested in its 1966 Decision. Galati et al., etc., v. Jordan et al., etc., 65 A.C.Minutes p. 2. In any event, now that Plaintiff has let things progress to the point where we cannot in good conscience interfere with the General Election of November 3, 1970—an interference that would not only be intolerable and offensive to the citizens and officials of the State of California, but would reek havoc with election procedures and the

---

[1]. Because of our disposition of the case, we need not consider the merits. Defendants urge that the State Board of Equalization, because of the nature of its powers and functions, is a "quasi-judicial, quasi-administrative" body and that therefore the "one man, one vote" doctrine would not apply. In this connection, but without indicating or deciding its application to or effect upon the case before us, we note that the Supreme Court has rejected a proffered distinction between legislative and administrative bodies. Hadley v. Junior College District, 397 U.S. 50, 56, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970):

"[A]s a general rule, whenever a state or local government decides to select

persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials."

Whether this presages a determination that the "one man, one vote" teaching should be extended to the California Board of Equalization we reserve to another time and a possible future lawsuit as outlined later herein.

successful candidates [2]—we inevitably come to the conclusion that Plaintiff's Motion for a Preliminary Interlocutory Judgment and the injunctive relief sought therein must be, and the same hereby is, denied. IT IS SO ORDERED.

### DISMISSAL OF SECOND AMENDED COMPLAINT WITHOUT PREJUDICE

Since we are in the posture where we cannot take any action to interfere with the State Election processes and procedures, and since the 1970 Federal Census figures are about to be released, it is readily apparent that Plaintiff will obtain all of the relief to which he is entitled if the California State Legislature acts to reapportion the State Board of Equalization districts in its forthcoming 1971 Regular Session scheduled to begin on January 4, 1971, less than one month hence.

That appropriate action will be taken cannot now reasonably be denied in the light of the Affidavits of the Chairmen of the respective California State Assembly and Senate Committees within whose jurisdiction reapportionment lies. Both Senator Whetmore, Chairman of the Senate Committee on Elections and Reapportionment, and Assemblyman Priolo, Chairman of the Assembly Committee on Elections and Constitutional Amendments, have with positive and undeniable affirmation, buttressed by their oaths, declared that they not only have already initiated and undertaken steps in preparation for reapportionment of the State Board of Equalization districts in the 1971 Regular Session of the Legislature, but have specifically laid out their plans for this reapportionment based upon the 1970 Census figures.

If, by some chance they should renege by inaction, or if either House of the Legislature should by failure to reapportion the State Board of Equalization give the lie to the oaths of Senator Whetmore and Assemblyman Priolo, then the Plaintiff has ready recourse to the California State Supreme Court, a route to relief that he well knows, having traveled it so many times in the past. If in those unlikely events and at that time he seeks that relief with due diligence, contrary to the pattern of procrastination pursued in the past, he can then come to us in the Federal Court with a new action to vindicate "one man, one vote" in the Board of Equalization after demonstrated inability to do so in the legislative halls and judicial chambers of California.

Until any such events and until that time, we have no alternative but to dismiss the Second Amended Complaint without prejudice to Plaintiff's filing a new and different complaint based on new and different facts which may be generated by any such inaction of the California State Legislature and the California Supreme Court.

It is so ordered.

---

2. The Court has been informed and takes judicial notice that the Secretary of State, as required by California law, issued Certificates of Election on December 9, 1970 to each person elected to the State Board of Equalization at the November 3, 1970 General Election.