[Sac. No. 7684.   In Bank.   Sept. 16, 1965.]

PHILL SILVER et al., Petitioners, v. EDMUND G. BROWN, as Governor. etc., et al., Respondents.

Phill Silver, in pro. per., for Petitioners.

Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, Launer, Chaffee & Hanna and Walter B. Chaffee for Respondents.

THE COURT.—In this proceeding petitioners as citizens, taxpayers, and voters seek a writ of mandate or other appropriate relief to enforce their rights and the rights of all others similarly situated to equality of voting power in the election of members to the House of Representatives of the United States Congress. (U.S. Const., art. I, § 2; U.S. Const., Amend. XIV; *Wesberry* v. *Sanders,* 376 U.S. 1 [84 S.Ct. 526, 11 L.Ed.2d 481].) The respondents are the Governor, the Secretary of State, the Attorney General, and all of the Representatives in Congress from the State of California.

In 1961 the Legislature divided the state into 38 congressional districts (Elec. Code, § 30000) pursuant to section 27 of article IV of the California Constitution.[1] Owing to the requirement of that section that congressional districts consist either of whole counties, whole assembly districts, or combinations thereof, many of the resulting districts departed substantially from the ideal population of one thirty-eighth of the total population of the state. Nine districts deviated from the ideal population of 413,000 by more than 15 per cent. The largest district was 43.4 per cent larger than the ideal district, and the smallest was 27.2 per cent smaller. The ratio of the largest to the smallest was 1.96 to 1.

■ Although these deviations may be constitutionally impermissible under *Wesberry* v. *Sanders,* 376 U.S. 1 [84 S.Ct. 526, 11 L.Ed.2d 481] (see also *Reynolds* v. *Sims,* 377 U.S. 533, 578 [84 S.Ct. 1362, 12 L.Ed.2d 506]; *Silver* v.

---

[1]Article IV, section 27, provides: ''When a congressional district shall be composed of two or more counties, it shall not be separated by any county belonging to another district. No county, or city and county, shall be divided in forming a congressional district so as to attach one portion of a county, or city and county, to another county, or city and county, except in cases where one county, or city and county, has more population than the ratio required for one or more Congressmen; but the Legislature may divide any county, or city and county, into as many congressional districts as it may be entitled to by law. Any county, or city and county, containing a population greater than the number required for one congressional district shall be formed into one or more congressional districts, according to the population thereof, and any residue, after forming such district or districts, shall be attached by compact adjoining assembly districts, to a contiguous county or counties, and form a congressional district. In dividing a county, or city and county, into congressional districts no assembly district shall be divided so as to form a part of more than one congressional district, and every such congressional district shall be composed of compact contiguous assembly districts.''

*Brown, ante,* pp. 270, 279 [46 Cal. Rptr. 308, 405 P.2d 132]), we have concluded that we should not assume jurisdiction at this time to consider redistricting before the 1966 congressional elections.

The deviations from equally populous congressional districts are not so great as the deviations from equally populous assembly districts, which we considered in *Silver* v. *Brown, ante,* p. 270 [46 Cal.Rptr. 308, 405 P.2d 132]. Moreover, congressional redistricting, unlike Assembly reapportionment, is not related to reapportionment of the California Senate, which must be achieved in time for the 1966 elections. It is also significant that there is now pending in Congress legislation that spells out with particularity the standards governing congressional districting. (H.R. 5505.) Since equally populous congressional districts cannot be constructed from existing assembly districts, any temporary alternative plan that this court might adopt in the event of legislative inaction would require either extensive provisions for elections at large or the appointment of a master to develop a plan creating many entirely new districts. We do not believe that the circumstances are so compelling as to require either of these alternatives at this time.

We are therefore of the opinion that the Legislature should have an opportunity to consider the question of congressional districting in the light of the standards set forth in *Silver* v. *Brown, ante,* pp. 270, 279-280 [46 Cal.Rptr. 308, 405 P.2d 132]. Accordingly, the petition is denied without prejudice to the right to seek similar relief if the Legislature has not enacted a new congressional districting measure by the close of its regular 1967 session.

MOSK, J.—I concur in the court's denial of the petition and in the opinion generally. However, I believe the fundamental principles involved in congressional representation are no different from those underlying state Senate and Assembly representation. Therefore, I would invite the Legislature to act in this instance as expeditiously as the court forthrightly proposed in *Silver* v. *Brown* (1965) *ante,* p. 270 [46 Cal.Rptr. 308, 405 P.2d 132].