[Sac. No. 7814. In Bank. Oct. 6, 1967.]

PHILL SILVER et al., Petitioners, v. RONALD REAGAN,
as Governor, etc., et al., Respondents.

[Sac. No. 7815. In Bank. Oct. 6, 1967.]

ABE VICKTER et al., Petitioners, v. RONALD REAGAN,
as Governor, etc., et al., Respondents; THE SENATE
AND THE ASSEMBLY OF THE STATE OF CALI-
FORNIA, Interveners.

Phill Silver, in pro. per., and David A. Leveton for Petitioners.

Bob Wilson, in pro. per., Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, Sanford N. Gruskin, Deputy Attorney General, George H. Murphy, Legislative Counsel, Edward K. Purcell, Principal Deputy Legislative Counsel, Clinton J. deWitt, Deputy Legislative Counsel, Robert L. Leggett, H. Allen Smith, Don H. Clausen, Charles S. Gubser, Craig Hosmer, Glenard P. Lipscomb, William S. Mailliard, Robert B. Mathias, Ed Reinecke, Burt L. Talcott, Charles M. Teague and James B. Utt for Respondents and for Interveners.

TRAYNOR, C. J.—In these proceedings petitioners as citizens, taxpayers, and voters seek a writ of mandate or other appropriate relief to enforce their rights and the rights of all others similarly situated to equality of voting power in the election of members to the House of Representatives of the United States Congress. (U.S. Const., art. I, § 2; U.S. Const., Amend. XIV; *Wesberry* v. *Sanders* (1964) 376 U.S. 1 [11 L.Ed.2d 418, 84 S.Ct. 526].) The Governor, the Secretary of State, the Attorney General, and the representatives in Congress from the State of California are respondents in both cases. The Senate and the Assembly of the California Legislature are respondents in the *Silver* case and interveners in the *Vickter* case.

In 1961 the Legislature divided the state into 38 congressional districts (Elec. Code, § 30000) pursuant to section 27 of article IV of the California Constitution.[1] Because that section requires congressional districts to consist either of whole counties, whole assembly districts, or combinations thereof, many of the resulting districts departed substantially

---

[1]Article IV, section 27, provides: "When a congressional district shall be composed of two or more counties, it shall not be separated by any county belonging to another district. No county. or city and county, shall be divided in forming a congressional district so as to attach one portion of a county, or city and county, to another county, or city and county, except in cases where one county, or city and county, has more population than the ratio required for one or more congressmen; but the Legislature may divide any county, or city and county, into as many congressional districts as it may be entitled to by law. Any county, or city and county, containing a population greater than the number required for one congressional district shall be formed into one or more congressional districts, according to the population thereof, and any residue, after forming such district or districts, shall be attached by compact adjoining assembly districts, to a contiguous county or counties, and form a congressional district. In dividing a county, or city and county, into congressional districts no assembly district shall be divided so as to form a part of more than one congressional district, and every such congressional district shall be composed of compact contiguous assembly districts."

from the ideal population of one thirty-eighth of the total population of the state. ■ Nine districts deviated from the ideal population of 414,000 [2] by more than 15 percent. The largest district was 42.9 percent larger than the ideal district and the smallest was 27.3 percent smaller. The ratio of the largest to the smallest was 1.97 to 1.

On July 29, 1965, petitioners in the *Silver* case sought a writ of mandate to secure reapportionment of the state's congressional districts on the same grounds urged in the present proceedings. We concluded that the Legislature should be given an opportunity to reapportion the congressional districts in the light of our recent legislative reapportionment decision (*Silver* v. *Brown* (1965) 63 Cal.2d 270 [46 Cal.Rptr. 308, 405 P.2d 132]) without being required to meet the urgent time limits that would have come into play had reapportionment been ordered in time for the 1966 elections. We therefore denied the petition "without prejudice to the right to seek similar relief if the Legislature has not enacted a new congressional districting measure by the close of its regular 1967 session." (*Silver* v. *Brown* (1965) 63 Cal.2d 316, 318 [46 Cal.Rptr. 531, 405 P.2d 571].) The Legislature adjourned on September 8, 1967, without enacting such a measure. Unless the Governor calls a special session, the Legislature will have no further opportunity to reapportion the congressional districts this year.

Under the decisions of the United States Supreme Court, we are convinced that the policies underlying the requirements of compactness and contiguity and the policies underlying maintenance of the integrity of political subdivisions and assembly districts cannot justify such extensive departures from population-based representation as exist among the state's congressional districts. (*Kilgarlin* v. *Hill* (1967) 386 U.S. 120, 122 [17 L.Ed.2d 771, 774, 87 S.Ct. 820, 822]; *Swann* v. *Adams* (1967) 385 U.S. 440, 443-444 [17 L.Ed.2d 501, 504, 87 S.Ct. 569, 572]; see *Silver* v. *Brown* (1965) 63 Cal.2d 270, 277 [46 Cal.Rptr. 308, 405 P.2d 132], and cases cited.) ■ Moreover, the requirement that assembly districts not be divided in forming congressional districts has been subtantially vitiated by the 1965 reapportionment of the Assembly.

Respondents contend, however, that because of the tremen-

---

[2]The 1960 figures used throughout this opinion are estimates of the 1960 census results that were used by the Legislature in making the 1961 apportionment. Any deviations from the final census figures, however, do not appear to be constitutionally significant.

dous growth of the state's population since the 1960 census, any reapportionment based on that census might create more inequalities than it would eliminate. They also contend that effective representation requires reasonable stability of congressional districts. They therefore conclude that the practical disruption of effective representation that would be caused by reapportionment now would outweigh any gain in theoretical equality of representation from such reapportionment in the remaining two Congresses that will be elected before the House of Representatives is reapportioned pursuant to the 1970 census.

If the departures from equally populous districts were substantially less than they are, it might be constitutionally permissible to defer reapportionment until after the 1970 census. ■■ The United States Supreme Court has made it clear, however, that the practical difficulties necessarily resulting from reapportioning cannot justify perpetuating an unconstitutional apportionment. (*Swann* v. *Adams* (1966) 383 U.S. 210, 211-212 [15 L.Ed.2d 707, 708, 86 S.Ct. 767]; *Reynolds* v. *Sims* (1964) 377 U.S. 533, 585 [12 L.Ed.2d 506, 541, 84 S.Ct. 1362]; see also *Swann* v. *Adams* (1967) 385 U.S. 440, 442 [17 L.Ed.2d 501, 503, 87 S.Ct. 569, 571]; *Silver* v. *Brown* (1965) 63 Cal.2d 270, 277, 278 [46 Cal.Rptr. 308, 405 P.2d 132].) Moreover, although the United States House of Representatives and Senate have not agreed on a measure to set congressional reapportionment standards, each house has passed a bill that would limit permissible population deviations of 15 percent before the 1970 census and to 5 percent thereafter. (H.R. 2508.) ■■ In contrast, 9 of California's districts deviate by more than 15 percent, 8 by more than 20 percent, and 1 by more than 40 percent. Given these discrepancies, we could deny relief in these cases only if it were demonstrated that population changes would make reapportionment on the basis of the 1960 census self-defeating and that no better population data are available.

■■ We are convinced that a reapportionment based on the 1960 census would not be self-defeating, and therefore we adhere to our holding in *Silver* v. *Brown* (1965) 63 Cal.2d 270 [46 Cal.Rptr. 308, 405 P.2d 132], that article IV, section 6, of the California Constitution validly requires that reapportionment be based on the 1960 census. (See also, *Maryland Citizens Committee for Fair Congressional Redistricting, Inc.* v. *Tawes* (1966) 253 F.Supp. 731, 734.) Although the population of the state has increased by about 25 percent since the

1960 census, it is only to the extent that such growth has been uneven throughout the state, that reapportioning on the basis of the 1960 census will result in inequalities. Except in those few districts where by chance uneven growth may have corrected an inequality created at the time of the 1961 apportionment, reapportionment pursuant to the 1960 census will not create population-shift inequalities that do not already exist under the present apportionment.

The contention that because of population shifts, a reapportionment based on the 1960 census may lead to greater inequalities in the population of districts than now exists may be tested by reference to the number of registered voters for each district in the 1966 general election. ■ [See fn. 3] If it is assumed that there is at least a rough correlation between the number of registered voters and the whole population of each district, it appears that a reapportionment based on the 1960 census would substantially reduce the inequalities in the present apportionment.[3] ■ Furthermore, inequalities resulting from population shifts during the 10 years between regular censuses are reasonable (*Reynolds* v. *Sims* (1964) 377 U.S. 533, 583-584 [12 L.Ed.2d 506, 539-540, 84 S.Ct. 1362] ), whereas inequalities resulting from arbitrary geographical requirements are invidious.

■ In the legislative reapportionment case we held that the Legislature should be given an opportunity to reapportion both of its houses even though it had already been given an opportunity to reapportion the Senate and had failed to do so. (*Silver* v. *Brown* (1965) 63 Cal.2d 270, 278-279 [46 Cal.Rptr. 308, 405 P.2d 132].) We concluded that if it enacted a valid reapportionment measure and adjourned more than 180 days before the June 1966 primary or failed to enact such a measure by that time, there would be sufficient time before the primary to prepare for the election either under a legislative reapportionment or a court reapportionment. We believe that

[3]For example, the 1st district is 28.9 percent too large on the basis of the 1960 census and 29.9 percent too large on the basis of the 1966 registration. For the 3d district, the figures are 21.4 and 24.5; for the 28th, 42.9 and 70.5; and for the 33d, 21.6 and 18.0. For the districts that are too small the corresponding figures are: for the 4th, —25.0 and —31.8; for the 5th, —27.3 and —40.6; and for the 7th, —18.5 and —13.0. Reapportionment on the basis of the 1960 census will substantially reduce the inequalities in the foregoing districts. The fact that new inequalities have arisen because of the rapid growth of such districts as the 10th, 33d, 34th, and 35th, which will not be corrected by a reapportionment based on the 1960 census, affords no basis for refusing to ameliorate those inequalities resulting from failure to apportion all districts equally in 1961.

we should follow that procedure in the present cases. The 180th day before the June 4, 1968 primary is December 7, 1967. If the Governor calls a special session of the Legislature, it will have sufficient time to enact a congressional reapportionment measure by that date.

It is for the Legislature to determine which provision or provisions of section 27 of article IV of the California Constitution should be subordinated to comply with the equal representation requirements of the United States Constitution. (*Silver* v. *Brown* (1965) 63 Cal.2d 270, 280 [46 Cal.Rptr. 308, 405 P.2d 132].) It should be noted that those requirements are more rigorous than we assumed in *Silver* v. *Brown*. We there stated the limits within which we believed an apportionment would carry at least a strong presumption of validity and beyond which it would be seriously suspect. "Those limits are that no district depart from the ideal size by more than 15 percent and that a majority of the members of each house be elected by the voters of districts containing at least 48 percent of the total population."[4] (63 Cal.2d at p. 279.) ▮ Since our decision, however, the United States Supreme Court held in *Kilgarlin* v. *Hill* (1967) 386 U.S. 120 [17 L.Ed.2d 771, 87 S.Ct. 820], and *Swann* v. *Adams* (1967) 385 U.S. 440 [17 L.Ed.2d 501, 87 S.Ct. 569], that such large deviations cannot be presumed valid but must be justified by a specific showing that a permissible state policy is thereby promoted. ▮ We believe that preserving the stability of existing districts for the two remaining elections that will be governed by the 1960 census is a sufficient basis to retain districts that do not deviate by more than 15 percent. Accordingly, the Legislature should be free, if it wishes, to retain as many of such existing districts that it is possible to retain consistently with correcting greater than 15 percent deviations.

We believe that all interested parties should be afforded an opportunity to be heard as to what plan the court should adopt if the Legislature fails to adopt a valid plan. Since time is of the essence, any proposed plan should be presented to the court not later than November 10, 1967. Any such plan must include illustrative maps and the population of the proposed districts based on the 1960 census and set forth complete

---

[4] In the case of the state's congressional delegation, the 48-percent figure would apply to a majority of the members of the delegation. Its purpose is to insure making districts of maximum deviation the exception rather than the rule.

descriptions of the districts either by metes and bounds or by reference to whole counties, whole present or former assembly districts, or other whole political subdivisions or census tracts.[5] Any plan submitted should be accompanied by a brief setting forth why the plan should be adopted. All proposed plans and supporting briefs must be served on all parties to these proceedings. Objections to any proposed plan may be filed on or before November, 27, 1967. In the event that the Legislature has not enacted a valid congressional reapportionment measure by December 7, 1967, the court will order into effect a plan it deems appropriate.

A writ of mandate will not issue in these cases at this time, but we retain jurisdiction to review any reapportionment legislation that may be enacted, to order a court plan into effect if necessary, and to grant any further relief that may appear proper in the premises. Petitioners shall recover their costs from the State of California. (Code Civ. Proc., § 1095.)

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[5]To the extent, for example, that any such plan preserves existing districts or creates new at-large districts by combining two or more whole present districts, it may describe such districts by reference to the present district or districts involved. (See *Silver* v. *Brown, supra,* 63 Cal.2d 270, 283-290.)