[Sac. No. 7917. In Bank. Jan. 18, 1972.]

LEGISLATURE OF THE STATE OF CALIFORNIA et al., Petitioners, v. ED REINECKE, as Lieutenant Governor, etc., et al., Respondents.

[Sac. No. 7919. In Bank. Jan. 18, 1972.]

EDMUND G. BROWN, JR., as Secretary of State, etc., Petitioner, v. RONALD REAGAN, as Governor, etc., Respondent.

[Sac. No. 7923. In Bank. Jan. 18, 1972.]

THIRTY-TWO MEMBERS OF THE UNITED STATES HOUSE OF REPRESENTATIVES, Petitioners, v. RONALD REAGAN, as Governor, etc., et al., Respondents.

## COUNSEL

George H. Murphy, Legislative Counsel, Clinton J. deWitt, Deputy Legislative Counsel, and Herman F. Selvin for Petitioners in No. 7917.

Edmund G. Brown, Jr., Daniel Hays Lowenstein and Philip Neumark for Petitioner in No. 7919 and for Respondent Secretary of State in Nos. 7917 and 7923.

Wyman, Bautzer, Rothman & Kuchel, Thomas H. Kuchel and Frank Rothman for Petitioners in No. 7923.

Evelle J. Younger, Attorney General, Robert Burton, Assistant Attorney General, and J. M. Sanderson, Deputy Attorney General, for Respondent in No. 7919 and for certain Respondents in Nos. 7917 and 7923.

John V. Diepenbrock for Respondent Lieutenant Governor.

Robert S. Daggett, Richards, Watson & Dreyfuss, Glenn R. Watson, Robert N. Joehnck, Halley & Cornell, James W. Halley, David J. Levy, City Attorney (Pinole and Concord), James P. O'Drain, City Attorney (Richmond), Samuel V. McGrath, Deputy City Attorney, LaFollette, Johnson, Horgan & Robinson, James Dexter Clark, Chinello, Chinello & Maddy, Kenneth L. Maddy, Frank J. Pagliaro, Jr., Seth M. Hufstedler, John L. Burton, Putnam Livermore, Tinning & Delap, Austin R. Gibbons, David E. Schricker, City Attorney (Redwood City), John J. Gottes, City Attorney (South Gate), John Philip Coghlan, John D. Maharg, County Counsel (Los Angeles), Edward H. Gaylord, Assistant County Counsel, Ray T. Sullivan, Jr., County Counsel (Riverside), Richard W. Dickenson, County Counsel (San Joaquin), Monroe N. Langdon, City Attorney (Stockton), Paul F. Mordy, Assistant City Attorney, Theodore R. Bresler, Deputy City Attorney, Keith C. Sorenson, District Attorney (San Mateo), and James M. Parmelee, Deputy City Attorney, on behalf of other interested parties.

## OPINION

**WRIGHT, C. J.**—In these mandate proceedings we are called upon to resolve the impasse created by the failure to date of the Legislature to pass legislative and congressional reapportionment bills acceptable to the Governor in time for the upcoming 1972 primary and general elections. For the reasons hereafter stated we have concluded that there is now no practical alternative available to us but to order into effect readily available temporary apportionment plans for the 1972 elections. ▮ As we have repeatedly emphasized in the past, however, reapportionment is primarily a matter for the legislative branch of the government to resolve. (*Silver* v. *Brown* (1965) 63 Cal.2d 270, 280 [46 Cal.Rptr. 308, 405 P.2d 132]; *Silver* v. *Brown* (1965) 63 Cal.2d 316, 318 [46 Cal.Rptr. 531, 405 P.2d 571]; *Silver* v. *Reagan* (1967) 67 Cal.2d 452, 458 [62 Cal.Rptr. 424, 432 P.2d 26].) Accordingly, we urge the Legislature and the Governor, in the exercise of their shared legislative power to enact laws (see *Lukens* v. *Nye* (1909) 156 Cal. 498, 501, 505 [105 P. 593]), to enact reapportionment measures in time for the 1972 elections, and thus to render unnecessary the use of our temporary plans. In this respect we note that the date of the June primary, at least insofar as it relates to the nominations of candidates for seats in the Legislature and the Congress, could be postponed by statute to allow substantial additional time for the orderly conduct of such primary nominating election. ▮ Since, however, the legislative impasse may continue indefinitely, and since "it is our duty to insure the electorate equal protection of the laws" (*Silver* v. *Brown, supra,* 63 Cal.2d 270, 282), we deem it essential to state that we shall proceed well in advance of the 1974 elections to draft our own reapportionment plans based on the 1970 census unless, by the end of its regular session, the Legislature has enacted valid statutes reapportioning the legislative and congressional districts.

The parties to the litigation involving legislative reapportionment are the Governor; the Legislature; various members of the Legislature representing the views of various groups of legislators; the Lieutenant Governor, the Attorney General, the Controller, the Secretary of State, and the Superintendent of Public Instruction acting as members of the Reapportionment Commission; and the Secretary of State acting as chief election official of the state. The parties to the litigation involving congressional reapportionment are 32 of the members of the United States House of Representatives from California, the Governor, the Secretary of State, other elected officials of the state, and all of the members of the Legislature.

We turn to the conflicting contentions of the parties.

Since the Legislature failed to enact statutes reapportioning the Assembly and senatorial districts at its first regular session following the 1970 federal census, at least a majority of the members of the Reapportionment Commission now assert the authority to reapportion those districts and have commenced working toward that end. In *Legislature* v. *Reinecke,* Sac. 7917, petitioners challenge the authority of the commission to act and seek a peremptory writ of mandate directing it not to reapportion either house of the Legislature.

Section 6 of article IV of the California Constitution provides in part:[1]

---

[1]Section 6 in its entirety provides: "For the purpose of choosing members of the Legislature, the State shall be divided into 40 senatorial and 80 assembly districts to be called senatorial and assembly districts. Such districts shall be composed of contiguous territory and assembly districts shall be as nearly equal in population as may be. Each senatorial district shall choose one Senator and each assembly district shall choose one member of Assembly. The senatorial districts shall be numbered from 1 to 40, inclusive, in numerical order, and the assembly districts shall be numbered from 1 to 80 in the same order, commencing at the northern boundary of the State and ending at the southern boundary thereof. In the formation of assembly districts no county, or city and county, shall be divided, unless it contains sufficient population within itself to form two or more districts, and in the formation of senatorial districts no county, or city and county, shall be divided, nor shall a part of any county, or of any city and county, be united with any other county, or city and county, in forming any assembly or senatorial district. The census taken under the direction of the Congress of the United States in the year 1920, and every 10 years thereafter, shall be the basis of fixing and adjusting the legislative districts; and the Legislature shall, at its first regular session following the adoption of this section and thereafter at the first regular session following each decennial federal census, adjust such districts, and reapportion the representation so as to preserve the assembly districts as nearly equal in population as may be; but in the formation of senatorial districts no county or city and county shall contain more than one senatorial district, and the counties of small population shall be grouped in districts not to exceed three counties in any one senatorial district; provided, however, that should the Legislature at the first regular session following the adoption of this section or at the first regular session following any decennial federal census fail to reapportion the assembly and senatorial districts, a Reapportionment Commission, which is hereby created, consisting of the Lieutenant Governor, who shall be chairman, and Attorney General, State Controller, Secretary of State and State Superintendent of Public Instruction, shall forthwith apportion such districts in accordance with the provisions of this section and such apportionment of said districts shall be immediately effective the same as if the act of said Reapportionment Commission were an act of the Legislature, subject, however, to the same provisions of referendum as apply to the acts of the Legislature.
"Population
"Each subsequent reapportionment shall carry out these provisions and shall be based upon the last preceding federal census. But in making such adjustments no persons who are not eligible to become citizens of the United States, under the naturalization laws, shall be counted as forming a part of the population of any district. Until such districting as herein provided for shall be made, Senators and Assemblymen shall be elected by the districts according to the apportionment now provided for by law."

"should the Legislature at the first regular session . . . following any decennial federal census fail to reapportion the assembly and senatorial districts, a Reapportionment Commission, which is hereby created, . . . shall forthwith apportion such districts in accordance with the provisions of this section. . . ." This provision of section 6 was adopted in 1926 at the same time the people amended section 6 to provide for a federal plan of legislative apportionment whereby the Senate was apportioned largely on a geographical basis and the Assembly was apportioned largely but not entirely on a population basis. After the United States Supreme Court held that the federal plan provisions of section 6 applicable to the Senate violated the one man, one vote requirement of the equal protection clause (*Jordan* v. *Silver* (1965) 381 U.S. 415 [14 L.Ed.2d 689, 85 S.Ct. 1572], affg. *Silver* v. *Jordan* (D.Cal. 1964) 241 F.Supp. 576), this court was confronted in *Silver* v. *Brown, supra,* 63 Cal.2d 270, with implementing the United States Supreme Court decision.

We noted our prior holding in *Yorty* v. *Anderson* (1963) 60 Cal.2d 312, 316-317 [33 Cal.Rptr. 97, 384 P.2d 417], that the failure of the Legislature to enact a valid reapportionment at its first regular session following a federal decennial census did not deprive it of power thereafter to enact a valid reapportionment within the ensuing decade. (63 Cal.2d at p. 274.) We pointed out that such power was part of the legislative power vested in the Legislature by section 1 of article IV of the California Constitution, subject to the powers reserved to the people of initiative and referendum. (63 Cal.2d at p. 280.) We then held that the Reapportionment Commission had no power to act on the ground that the provision creating the commission was inseverable from the invalid parts of section 6. We stated: "There is also no merit in the contention that since the Legislature has had the opportunity but has failed to reapportion the Senate, the Reapportionment Commission should now do so. Even if we could reasonably disregard the express condition precedent to the commission's power, namely, that the Legislature must have failed to reapportion itself after the 1960 census, we could not hold the provisions creating the commission severable from the invalid parts of section 6. In amending section 6 in 1926 the people created the commission to enforce a specific apportionment plan. We do not believe they would have delegated such broad legislative power to the commission as is now appropriate for the Legislature to exercise, had they known that the standards set forth in section 6 could not be followed consistently with the United States Constitution. [Citations.]" (63 Cal.2d at p. 281.)

We adhere to that holding, not only because of the principle of stare decisis, but because it is compelled by the language of section 6. The only

authority of the commission is to "apportion such districts in accordance with the provisions of this section," but for the commission to so apportion the districts would necessarily violate the United States Constitution.

It is contended that insofar as the California Senate and Assembly are concerned, the reapportionment bills passed by the Legislature at its 1971 First Extraordinary Session are effective despite the Governor's vetoes. It is urged that the doctrine of separation of powers compels the conclusion that the Legislature must have unfettered power to reapportion its own houses within constitutional limits and that therefore the Governor is without power to override the will of a simple majority by exercising his vetoes. We find no basis whatsoever in the California Constitution, however, for concluding that measures reapportioning the houses of the Legislature are not laws that must be enacted pursuant to the Constitution. (See *Smiley* v. *Holm* (1932) 285 U.S. 355 [76 L.Ed. 795, 52 S.Ct. 397].) Subdivision (b) of section 8 of article IV provides: "The Legislature may make no law except by statute and may enact no statute except by bill." Subdivision (a) of section 10 of article IV provides: "Each bill passed by the Legislature shall be presented to the Governor. It becomes a statute if he signs it. He may veto it by returning it with his objections to the house of origin, which shall enter the objections in the journal and proceed to reconsider it. If each house then passes the bill by rollcall vote entered in the journal, two thirds of the membership concurring, it becomes a statute. A bill presented to the Governor that is not returned within 12 days becomes a statute." There is no room in these provisions for evading the Governor's veto power with respect to reapportionment measures.

Since valid reapportionment measures based on the 1970 census have not been enacted, and since population shifts reflected in that census and increasingly strict standards of electoral equality (see *Calderon* v. *City of Los Angeles* (1971) 4 Cal.3d 251, 266-271 [93 Cal.Rptr. 361, 481 P.2d 489], and cases cited) make clear that the present legislative and congressional apportionments no longer meet the one man, one vote requirement, it is now incumbent upon this court to determine how this impasse should be resolved in time for the orderly conduct of the 1972 elections.

The problem is intensely practical and extremely urgent, for election officials must know the district boundaries by February 23, 1972 (see Elec. Code, § 6462; *Silver* v. *Brown, supra,* 63 Cal.2d 270, 277) to prepare for a June primary. Moreover, even a delay in fixing district boundaries until that date would create serious complications for the election officials in the larger counties. Reapportionment, however, is an extremely

complex matter, for innumerable plans could be adopted that would satisfy the one man, one vote requirement. Before this court, in the discharge of its duty to insure the electorate equal protection of the laws, undertakes to draft reapportionment plans of its own, it should afford all interested parties an opportunity to be heard. The court should be fully informed with respect to all of the possible criteria that might be adopted for reapportionment and with respect to all of the specific implementations of such criteria that might be ordered into effect. Insofar as the 1972 elections are concerned, there is obviously insufficient time before district boundaries must be known for this court to allow all interested parties to be heard, to resolve the conflicting contentions presented, and to translate its conclusions into concrete reapportionment plans for the legislative and congressional districts. Accordingly, the only practical choices now available to us are either to allow the present apportionment to remain in effect temporarily for the 1972 elections or to adopt as temporary court plans for the 1972 elections the plans passed by the Legislature but vetoed by the Governor. Neither choice is satisfactory, and in determining which is the least undesirable, we consider reapportionment of legislative districts and of congressional districts separately.

Only the most compelling considerations would impel us to disregard the solemn vetoes of the Governor and to adopt the plans passed by the Legislature as court plans, at least in the absence of a complete hearing, as described above, which would allow us to exercise a fully informed and independent judgment with respect to those plans. Insofar as reapportionment of the Legislature is concerned, we find no such compelling considerations. We believe that it will be far less destructive of the integrity of the electoral process to allow the existing legislative districts, imperfect as they may be, to survive for an additional two years than for this court to accept, even temporarily, plans that are at best truncated products of the legislative process. (See *Reynolds* v. *Sims* (1964) 377 U.S. 533, 585 [12 L.Ed.2d 506, 541, 84 S.Ct. 1362]; *Silver* v. *Brown, supra,* 63 Cal.2d 270, 278; *Silver* v. *Brown, supra,* 63 Cal.2d 316, 318.)

There are, however, compelling considerations that impel us to adopt as a temporary court plan, for the 1972 elections only, the bill passed by the Legislature to reapportion the congressional districts. (Assembly Bill No. 16, 1971 First Extraordinary Session.) Unlike the numbers of assemblymen and state senators, which remain unchanged, the number of representatives in the United States House of Representatives to which California is entitled increased following the 1970 census from 38 to 43. Accordingly, unless congressional districts are reapportioned, the offices of five repre-

sentatives will either have to be left unfilled or filled by statewide elections. We cannot accept either alternative, for Congress has expressly provided that California shall elect 43 representatives from 43 single member districts.[2] We need only add that we fully agree with the congressional mandate. It would be wholly unacceptable to avoid statewide congressional elections by depriving the state of the representation of five congressmen to which it is entitled, but to conduct statewide elections to fill five congressional seats in a state of California's geographical size and large population would not only tremendously increase the burdens and expenses of effective campaigning but, by increasing the choices confronting the electorate from the candadates for one to the candidates for six congressional seats, would seriously impede the casting of informed ballots.

We regret, of course, that the only readily available congressional reapportionment plan is one that has been vetoed by the Governor. We note, however, that it has the bipartisan support of all of the California members of the United States House of Representatives appearing herein and that it is opposed by none of such members. We would be naive not to recognize that the plan was drafted with the interests of the incumbents in mind. Whether or not we may deem it appropriate to consider those interests when and if we must ultimately draft our own reapportionment plans for post-1972 elections, the fact that Assembly Bill No. 16 may favor incumbents does not disqualify it from serving as the court's temporary plan in the exigent circumstance confronting us.

■ To summarize we hold that the Reapportionment Commission has no jurisdiction to reapportion the Legislature. ■ We further hold that unless the Legislature enacts valid legislative reapportionment statutes in time for the 1972 elections, the present statutes apportioning the Legislature shall remain in effect for the 1972 elections. ■ We finally hold that unless the Legislature enacts a valid congressional reapportionment in time for the 1972 elections, the congressional districts set forth in Assembly Bill No. 16, 1971 First Extraordinary Session, shall be in effect

---

[2]United States Code, title 2, section 2c, provides: "In each State entitled in the Ninety-first Congress or in any subsequent Congress thereafter to more than one Representative under an apportionment made pursuant to section 2a(b) of this title, there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established, no district to elect more than one Representative (except that a State which is entitled to more than one Representative and which has in all previous elections elected its Representatives at Large may elect its Representatives at Large to the Ninety-first Congress)."

for the 1972 elections.[3] We retain jurisdiction to draft new reapportionment plans for the elections of 1974 through 1980 in the event that the Legislature does not enact valid legislative and congressional reapportionment statutes by the close of its 1972 regular session.

Since there is no reason to believe that any of the parties to these proceedings will not accede to our holdings herein, no purpose would be served by issuing writs of mandate. (See *Silver* v. *Brown* (1966) 63 Cal.2d 841, 848 [48 Cal.Rptr. 609, 409 P.2d 689].) All parties shall recover their costs from the State of California. (See Code Civ. Proc., § 1095.)

This judgment is final forthwith.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[3]It is undisputed that there are 18 clerical errors in Assembly Bill No. 16 as a result of which the literal language of the legal descriptions of some of the 43 congressional districts departs from the maps and computer print-outs relied upon by the Legislature in passing the bill. The changes necessary to correct these clerical errors are set forth in an appendix to this opinion. In adopting Assembly Bill No. 16 as the court's plan for congressional reapportionment we incorporate in that bill the corrections set forth in the appendix.