Harold F. **DONNELLY** et al., Plaintiffs,

v.

Thomas J. **MESKILL**, Governor of the State of Connecticut, et al.,
Defendants,

J. Brian Gaffney et al., Intervenors.

Christopher G. **LINDSAY** et al.,
Plaintiffs,

v.

Thomas J. **MESKILL**, Governor of the State of Connecticut et al.,
Defendants,

J. Brian Gaffney et al., Intervenors.
Civ. Nos. 15103, 15109.

United States District Court,
D. Connecticut.

July 18, 1972.

Francis J. McCarthy, Hartford, Conn., for Harold F. Donnelly and others.

Alan Neigher, Bridgeport, Conn., for Christopher G. Lindsay and others.

Robert K. Killian, Atty. Gen., Raymond J. Cannon and Barney Lapp, Asst. Attys. Gen., of counsel), for defendants.

Richard R. Stewart, Hartford, Conn., for Intervenor J. Brian Gaffney.

James A. Wade, Hartford, Conn. and Robert Satter, Satter, Fleischmann & Sherbacow, Hartford, Conn., for Intervenor John M. Bailey.

Joseph Adinolfi, Jr., Adinolfi, O'Brien & Hays, Hartford, Conn., for Intervenor Willliam R. Cotter.

W. Paul Flynn, Kopkind & Flynn, New Haven, Conn., for Intervenor Robert N. Giaimo.

S. William Bromson, Windsor Locks, Conn., for Intervenor Ella T. Grasso.

Francis B. Feeley, Feeley, Elliott & Nichols, Waterbury, Conn., for Intervenor John S. Monagan.

Before SMITH, Circuit Judge, BLUMENFELD and ZAMPANO, District Judges.

## MEMORANDUM OF DECISION

J. JOSEPH SMITH, Circuit Judge:

These two cases, attacking the constitutionality of the present Congressional district boundaries in Connecticut, arise under the Fourteenth Amendment to the Constitution of the United States, Article VI, Clause 2 of the Constitution (the Supremacy Clause) and 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred by 28 U.S.C. §§ 1343(3) and 1343(4). Plaintiffs seek temporary and permanent injunctions restraining the officers of the state from holding elections in accordance with the present districting statute, Conn.Gen.Stats. § 9–9, Public Act 2 § 1 (1964), and for further delineation of the rights of the parties.

A three-judge district court was appointed on June 14, 1972 to hear and determine the cases pursuant to 28 U.S.C. §§ 2281, 2284.

The cases were assigned for hearing June 19, 1972. All parties to the actions as brought were represented and additional parties consisting of the present Connecticut members of the U.S. House of Representatives and the respective state chairmen of the Republican and Democratic parties were permitted as individuals to intervene. The court requested the filing of proposed plans of reapportionment and set the cases down for hearing on June 28, 1972. A number of plans were submitted and all parties were given an opportunity to present evidence and argue the suitability of the various plans submitted, as well as of the existing apportionment. Counsel for intervenors Bailey and Gaffney requested that no court action be taken on the plan until after Friday, July 7, 1972 to permit an attempt by the two major political parties to work out a solution of the problem without court action.

It was conceded by all parties, and the court finds, that the present apportionment fails to meet present constitutional requirements of equal representation of the citizens and voters of Connecticut.[1]

It has been obvious, of course, since the 1970 census results became known, that reapportionment is necessary.[2] This is in the normal course a matter for the legislative process. An apportionment bill was passed by the legislature in Public Act 807, which was vetoed by the Governor, apparently because of

---

1. The present six Congressional Districts were established in 1964, at a special session of the Connecticut General Assembly (Conn.Gen.Stats. § 9–9, P.A. 2 § 1). According to the 1970 census, the population of each of the six Congressional Districts in the State of Connecticut, as presently constituted, is as follows:

First District ........... 483,938
Second District .......... 533,627
Third District ........... 462,082
Fourth District .......... 546,964

Fifth District ........... 497,184
Sixth District ........... 508,422
    a total of 3,032,217, or an average
    of 505,369.

2. See, e. g., Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Kilgarlin v. Hill, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969).

**964**

its alleged political effects as well as the extent of its deviation from absolute numerical equality in population of the districts. Further efforts to solve the problem legislatively have so far been of no avail and finally the present actions were brought and this three-judge district court appointed, as stated above, on June 14, 1972.

With the election in November and nominations to be completed, the time for action is short. The parties to the actions and their counsel have acted with commendable expedition once the actions were filed and have cooperated in presenting to the court for action a number of possible alternatives, including temporary retention of the existing districts, adoption of the plan of Public Act 807, modification of Public Act 807 to minimize population deviations, a plan for absolute equality, cutting some town lines, a plan for near absolute equality without cutting town lines regardless of the geography or compactness of the districts and other plans largely built around existing districts.

Three of these plans come close to perfect equality.

The three plans submitted which have minimal population deviations are:

Exhibit D–1 (submitted by counsel for plaintiffs in the Donnelly action) — without cutting town lines, maximum deviation 106 or 0.02%. (One district runs from Bridgeport, Stratford and Milford on Long Island Sound to Salisbury in the Northwest corner of the state). The districts generally lack compactness. The shapes of the districts are irregular to the point of being bizarre.

Exhibit Gaf–1 (submitted by counsel for intervenor Gaffney) — has no deviation. It cuts Bridgeport, a major city, population 156,542; Watertown, population 18,610; West Hartford, population 68,031; Manchester, population 47,994; and Cheshire, population 19,051.

Exhibit B–1 (submitted by counsel for intervenor Bailey) — has a maximum deviation of 200 or 0.04%. It cuts Newtown, population 16,942; Somers, population 6,893; Clinton, population 10,267; Portland, population 8,812; and Westport, population 27,414.

The population variations between these three plans are small, both numerically and percentagewise, ranging from 1 to 200 people maximum deviation between the largest and smallest districts and from 0% to 0.04%, quite possibly within the margins of probable error inherent in the census data. D–1 has an administrative advantage in not cutting town lines. Gaf–1 and B–1 have an advantage in compactness over D–1. B–1 has the added advantage that it is basically the plan adopted by the legislature,[3] and advocated by the Lindsay plaintiffs and intervenor Cotter, adjusted, however, to the more refined census data now available to reduce the population deviation from a maximum deviation of 4383 people or .866% between the largest and smallest districts set up by Public Act 807 to a maximum deviation of 200 people or 0.04% between the largest and smallest districts of the plan submitted as Exhibit B–1.

Intervenor Giaimo submitted evidence as to coverage of communications media,

3. *See* Legislature of the State of California v. Reinecke et al., 6 Cal.3d 595, 99 Cal.Rptr. 481, 492 P.2d 385 (1972).

a consideration, of course, arguing for compactness of districts to bring about ease and economy not only in political campaigning but also in communication of ideas between representative and constituent.

The plaintiffs in the Lindsay action, and intervenor Cotter argue that Public Act 807 is close enough to numerical equality so that the court should adopt it, in view of the difficulty of setting up new election machinery if towns are to be cut.

The numerical disparities in that plan if not modified, involving an apparent maximum total deviation from largest to smallest district of 4383, as well as in the Giaimo and Monagan plans involving an apparent maximum total deviation from largest to smallest district in the Giaimo plan of 3361 and in the Monagan plan an apparent maximum of 5513, appear too large to be justified by any consideration urged upon us.[4]

There is no reason obvious to us which would prevent the prompt implementation of the plan B–1 if approved, following the general outline of Public Act 807, but reducing population variation to 0.-04% and calling for the division of only five relatively smaller communities.

The legislative adoption of Public Act 807 tips the scales in favor of the plan in Exhibit B–1, which provides districts essentially as outlined by the legislature, with adjustments necessary to bring about virtually complete population equality.

If time permitted extended hearings before the court or extended consideration by a court-appointed master, a better plan might be devised, weighing all possible factors. This may be possible for future elections, and it would of course be far preferable if this were done through the normal legislative process, where determination of this matter rightfully belongs. The plan we adopt, however, meets constitutional requirements and appears sound and workable.

The application for injunction is granted.

Defendants, their privies and successors in office and all persons acting by, for or through them, are enjoined from carrying out elections of representatives of the people of Connecticut in the Congress of the United States in and for the districts existing under the present Connecticut apportionment statute.

The plan of apportionment set forth in Exhibit B–1 is approved. Districts for the election of representatives of the people of Connecticut in the Congress of the United States are hereby established as follows:

FIRST DISTRICT, consisting of the Towns of Bloomfield, Windsor, South Windsor, West Hartford, Hartford, East Hartford, Manchester, Bolton, Newington, Wethersfield, Glastonbury, Hebron, Marlborough, Berlin, Rocky Hill, Cromwell, and so much of the Town of Portland as includes Enumeration District No. 613, as appears on United States Bureau of Census Maps, 1970 Census.

SECOND DISTRICT, consisting of the Towns of Stafford, Union, Woodstock, Thompson, Ellington, Tolland, Willington, Ashford, Eastford, Pomfret, Putnam, Vernon, Coventry, Mansfield, Chaplin, Hampton, Brooklyn, Killingly, Andover, Columbia, Windham, Scotland, Canterbury, Plainfield, Sterling, Lebanon, Franklin, Sprague, Lisbon, Griswold, Voluntown, East Hampton, Colchester, Bozrah, Norwich, Preston, Middlefield, Middletown, Durham, Haddam, East Haddam, Salem, Montville, Ledyard, North Stonington, Chester, Deep River, Essex, Westbrook, Old Saybrook, Lyme, Old Lyme, East Lyme, Waterford, New London, Groton, Stonington, so much of the Town of Portland as is not included in the First District; so much of the Town of Somers as includes Enumeration Districts Nos. 215 and 216, as appears on United States Bureau of Census Maps, 1970 Census; and the Town of Clinton, exclusive of Enumeration Dis-

---

4. *See* Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969).

tricts Nos. 676, 677, 678 and 681, as appears on United States Bureau of Census Maps, 1970 Census.

THIRD DISTRICT, consisting of the Towns of Wallingford, Hamden, North Haven, North Branford, Guilford, Madison, Killingworth, Woodbridge, Orange, Stratford, Milford, West Haven, New Haven, East Haven, Branford, and so much of the Town of Clinton as includes Enumeration Districts Nos. 676, 677, 678 and 681, as appears on United States Bureau of Census Maps, 1970 Census.

FOURTH DISTRICT, consisting of the Towns of Greenwich, Stamford, Darien, Norwalk, Fairfield, Bridgeport, and the Town of Westport exclusive of Block Group No. 1 of Tract 501 and Block Groups Nos. 1 and 6 of Tract 503, as appears on United States Bureau of Census Maps, 1970 Census.

FIFTH DISTRICT, consisting of the Towns of New Canaan, Wilton, Weston, Easton, Ridgefield, Redding, Danbury, Bethel, Monroe, Trumbull, Shelton, Derby, Ansonia, Seymour, Oxford, Middlebury, Naugatuck, Beacon Falls, Bethany, Prospect, Waterbury, Wolcott, Cheshire, Meriden, Newtown exclusive of Enumeration Districts Nos. 9800, 9802 and 9809, as appears on United States Bureau of Census Maps, 1970 Census; and so much of the Town of Westport as includes Block Group No. 1 of Tract 501 and Block Groups Nos. 1 and 6 of Tract 503, as appears on United States Bureau of Census Maps, 1970 Census.

SIXTH DISTRICT, consisting of the Towns of Salisbury, Sharon, Kent, Sherman, New Fairfield, Brookfield, New Milford, Bridgewater, Southbury, Roxbury, Washington, Warren, Cornwall, Canaan, North Canaan, Norfolk, Goshen, Litchfield, Morris, Bethlehem, Woodbury, Watertown, Thomaston, Plymouth, Harwinton, Torrington, Winchester, Colebrook, Hartland, Barkhamsted, New Hartford, Burlington, Bristol, Southington, Plainville, New Britain, Farmington, Avon, Canton, Simsbury, Granby, East Granby, Suffield, Windsor Locks, East Windsor, Enfield, so much of the town of Newton as includes Enumeration Districts Nos. 9800, 9802 and 9809, as appears on United States Bureau of Census Maps, 1970 Census; and the Town of Somers exclusive of Enumeration Districts Nos. 215 and 216, as appears on United States Bureau of Census Maps, 1970 Census.

The defendants are ordered to place in effect with all reasonable dispatch the plan approved herein.

The Secretary of the State is authorized and directed to take such steps as may be necessary through appropriate state and town officials and employees promptly to translate the census area descriptions in the plan, of the towns divided between two or more Congressional districts, to street and other geographical descriptions appropriate in implementing the plan for use in the election process for the election of November 7, 1972 and any succeeding elections unless and until a valid redistricting is enacted into law.

The Secretary of the State is authorized and directed to establish dates for district nominating conventions and primaries, filing of petitions and any other steps in the nominating process, conforming as well as reasonably possible to the time intervals contemplated by existing law.

The Secretary of the State is authorized to correct any typographical, clerical or other minor errors in the plan as adopted.

The foregoing may serve as the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

The court retains jurisdiction of the actions.