RICHARD TAM, Appellant, *v.* STANTON R. COLTON and Additional Parties Ordered by the Court, FRED ANDERSON, JAMES L. BUCHANAN, II, JOHN BUCHANAN, LILLY FONG, CHRIST N. KARAMANOS, MOLLY F. KNUDTSEN, LOUIS E. LOMBARDI, BRENDA MASON, JOHN TOM ROSS, Individually and as the Board of Regents of the University of Nevada, ALAN ELLSBERG, RONALD KENNETH FORNER, MICHAEL J. SIGNORELLI, Jr., and the STATE OF NEVADA, Respondents.

No. 10919

JOHN TOM ROSS, Appellant, *v.* BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA, JAMES BUCHANAN, Chairman, and Members FRED ANDERSON, LOUIS E. LOMBARDI, CHRIST N. KARAMANOS, BRENDA MASON, LILLIAN FONG, MOLLY F. KNUDTSEN and JOHN BUCHANAN, and

MIKE O'CALLAGHAN, GOVERNOR OF THE STATE OF NEVADA, RESPONDENTS.

No. 10942

July 19, 1978 581 P.2d 447

*Morris & Wood,* Las Vegas, for Appellant Tam.

*John Tom Ross,* Carson City, for Appellant Ross.

*George E. Holt,* District Attorney, Clark County, for Respondent Colton.

*Robert List,* Attorney General; *Donald Klasic,* Deputy Attorney General; and *Larry Lessly,* University Counsel, for other Respondents.

## OPINION

*Per Curiam:*
NRS 396.040 prescribes a nine-member Board of Regents for

the University of Nevada System, each member elected to fill a six-year term of office. Two members are elected from Washoe County (District One), five members are elected from Clark County (District Two), and two members are elected from the remainder of the State (District Three). The terms of the members of the Board are staggered, so that three members are elected every two years.

NRS 396.041 divides Clark County (District Two) into five geographic subdistricts, each consisting of several Nevada Assembly districts. At the 1978 General Election, two members from Clark County are to be elected to six-year terms. In Subdistrict "C", one additional member is to be elected to fill the remaining two years of a six-year term commenced in 1974. *See,* 396.060.

On May 26, 1978, Richard Tam, the appellant in No. 10919, attempted to file a declaration of candidacy for the Board of Regents for a four-year term on an at-large basis in District Two. Respondent Colton, the Registrar of Voters for Clark County, refused to accept the filing unless Tam filed as a candidate for the unexpired part of the six-year term in Subdistrict "C", the subdistrict in which he resides. Tam then filed a petition for writ of mandamus, requesting the court to compel Colton to accept his declaration of candidacy, and raising two contentions. He first argued that the six-year term of office prescribed by NRS 396.040 violates Article 15, § 11 and Article 11, § 7 of the Nevada Constitution. He further contended that the subdistricting scheme outlined in NRS 396.041 results in the dilution of the voting power of the residents of his subdistrict, in violation of the 14th Amendment to the Constitution of the United States. On June 22, 1978, the district court for the Eighth Judicial District denied the petition for writ of mandamus, and Tam perfected this appeal.

On September 29, 1977, John Tom Ross, the appellant in No. 10942 and a Regent of the University of Nevada, filed an action under NRS 30.010, *et seq.* (the Uniform Declaratory Judgments Act), seeking a judicial declaration that the six-year term of office prescribed by NRS 396.040 is unconstitutional, and thus that certain administrative actions taken by the Board of Regents following votes involving the participation of certain members then in the last two years of their six-year terms were null and void. On May 31, 1978, the district court for the First Judicial District ruled that the six-year term prescribed by NRS 396.040 did not conflict with the Nevada Constitution, and Ross appealed.

Because these two actions involve substantially identical issues (with the exception of the equal protection apportion-

ment claim, which is pressed solely by Appellant Tam in No. 10919), we ordered consolidation on appeal. For the reasons that follow, we affirm the judgment of the district court in both cases.

I. *Standing.*

Appellant Tam asserts standing to prosecute his action alternatively as a candidate for Regent and as a registered voter in and resident of Subdistrict "C", District Two. Since the challenged provisions of the Nevada Revised Statutes in this case do not involve candidate qualifications as such, we fail to see how Tam as candidate has standing to assert any constitutional violation as to himself. *Contrast,* Buckley v. Valeo, 424 U.S. 1, 12 (1975); Stoner v. Fortson, 379 F.Supp.704 (D.Ga.1972); Mortillaro v. State of La., 356 F.Supp. 521 (D.La. 1972). However, Tam's failure to assert any legally protectable interest as a candidate is not fatal to this action, for it is clear not only that a candidate has standing to assert the constitutional rights of the voters in his district, Walgren v. Board of Selectmen of Town of Amherst, 519 F.2d 1364 (1st Cir. 1975); Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973), but also that Tam in his capacity as voter in his particular district possesses the requisite standing to assert the claims presented in this case. Clark County v. City of Las Vegas, 94 Nev. 74, 574 P.2d 1013 (1978).

Appellant Ross has based his claim on the Uniform Declaratory Judgments Act, NRS 30.010, *et seq.* As a member of the Board of Regents, he is clearly a "person . . . whose rights, status or other legal relations are affected by a statute." NRS 30.040. He, therefore, has the requisite standing to challenge the six-year terms prescribed under NRS 396.040.

II. *The Six-Year Term.*

In 1971, the Nevada Legislature amended NRS 396.040 to change the term of office of members of the Board of Regents from four years to six years. 1971 Stats. 1531. The appellants contend that any term longer than four years violates Article 15, § 11 and Article 11, § 7 of the Nevada Constitution.

1. Article 15, § 11 of the Constitution provides in pertinent part:

"The tenure of *any office not herein provided for* may be declared by law, or, when not so declared, such office shall be held during the pleasure of the authority making the appointment, *but the legislature shall not create any*

*office the tenure of which shall be longer than four (4) years,* except as herein provided in this constitution.'' (Emphasis supplied.)

The office of Regent of the University of Nevada is created by the Constitution. Article 11, § 7. *See,* King v. Board of Regents, 65 Nev. 533, 200 P.2d 221 (1948). This being so, the four-year term limitation imposed under Article 15, § 11 has no application in this case. *See,* 1929 Op. Atty. Gen. 326. Rather, unless the term of office of a Regent of the University is otherwise limited under the terms of the Constitution, the legislature is free to prescribe a term longer than four years. We see no conflict between the terms of Article 15, § 11 and NRS 396.040.

2. The appellants contend however that such a specific term limitation does exist in Article 11, § 7. That Section reads:

*"Board or Regents: Election and Duties.* The Governor, Secretary of State, and Superintendent of Public Instruction, shall *for the first Four Years and until their successors are elected and qualified* constitute a Board of Regents to control and manage the affairs of the University and the funds of the same under such regulations as may be provided by law. But the Legislature shall at its regular session next preceding the expiration of the term of Office of said Board or Regents provide for the election of a new Board of Regents and define their duties.'' (Emphasis supplied.)

The use of the term ''*first* Four Years,'' it is argued, conveys the framers' intent there should follow *subsequent* four-year terms. Thus, the term of office is fixed by the Constitution at four years.

This particular interpretation of Article 11, § 7, however, is belied both by a short survey of the constitutional debates and by the legislative practice in the intervening one hundred thirteen years since the enactment of Article 11, § 7. A survey of the constitutional debates reveals that an amendment to Article 11, § 7 specifically authorizing the legislature to fix the terms of the Board of Regents was rejected for the reason that it was thought that the legislature already possessed such a power under Article 11, § 4 of the Constitution.[1] Marsh, *Reports of the 1863 Constitutional Convention of the Territory of Nevada* (1972 ed.) 588–589.

---

[1] Mr. Nourse: ''I move to add to that amendment the words 'and fix their term of office'.'' Mr. Brosnan: ''I think that is provided for already.'' Mr. Collins: ''Section 4, I believe it is, covers that ground.''

Article 11, § 4 reads: '' *Establishment of state university; control by board of*

Further, if the term of office of the Regents had indeed been fixed in the Constitution, there is little reason to believe that the legislature would have enacted legislation specifically to fix the term of office upon the expiration of the four-year term of the first interim Board. However, such legislation was in fact enacted in 1869, 1869 Stats. 134, fixing the term of office of the Board of Regents at four years. Terms of two and four years were established in 1887, 1887 Stats. 43, which were re-enacted in 1905. 1905 Stats. 190. In 1917, the term was enlarged to ten years, 1917 Stats. 352, at which length it remained until 1941, 1941 Stats. 92, when the term was shortened to four years. The legislature's belief as to the scope of the powers conferred upon it under the terms of the Constitution, manifested soon after the enactment of the Constitution itself, lends support to the conclusion that Article 11, § 7 was meant only to set the term of the first interim Board of Regents, and that the term of office of subsequent Boards was left to the discretion of the legislature under the general rule-making powers conferred under Article 11, § 4. Hendel v. Weaver, 77 Nev. 16, 359 P.2d 87 (1961); State v. Worthington, 37 Nev. 212, 142 P. 230 (1914). We agree with the district court that Article 11, § 7 does not limit the term of office of the Board of Regents to four years. Consequently, we reject the challenges to the constitutionality of NRS 396.040.

III. *The Equal Protection Claim.*

Tam's second argument is that the districting scheme as presently drawn under NRS 396.041 results, by reason of population disparities among the different subdistricts, in a dilution of the voting power of the residents of his district under the guidelines originally set down in Reynolds v. Sims, 377 U.S. 533 (1964). His petition for the issuance of a writ of mandamus therefore requests that we require the 1978 election for the Board of Regents to be held on an at-large basis, and that we do away with the districting scheme set out in NRS 396.041.

The respondents marshal two arguments in response to Tam's equal protection attack: first, that the Board of Regents is not an official body exercising significant governmental control under Avery v. Midland County, 390 U.S. 474 (1968), and Hadley v. Junior College District, 397 U.S. 50 (1970), and thus that it is not subject to the one man, one vote requirement of Reynolds v. Sims, *supra;* and second, that even if subjected to equal protection scrutiny, the fact that the apportionment

*regents.* The Legislature shall provide for the establishment of a State University which shall embrace departments for Agriculture, Mechanic Arts, and Mining, *to be controlled by a Board of Regents whose duties shall be prescribed by Law.*" (Emphasis supplied.)

scheme reflected in NRS 396.041 was initially valid when adopted in 1971 precludes any further equal protection challenge for a ten-year period, until the 1980 decennial census has been completed. *See,* Reynolds v. Sims, *supra,* 377 U.S. at 583; Silver v. Reagan, 432 P.2d 26, 29 (Cal. 1967).

Rejecting the respondents' first argument, the district court adopted the second. It relied upon Hadley v. Junior College District, *supra,* to find that the Board of Regents exercised sufficient governmental powers to compel application of the one man, one vote principle to its selection process. The court found, however, that the initial validity of the apportionment scheme when adopted in 1971, *see,* Stewart v. O'Callaghan, 343 F.Supp. 1080 (D. Nev. 1972) (three-judge court), insulated the selection process from equal protection attack until the completion of the 1980 decennial census.

Although we agree with the district court's conclusion that the selection process of the Board of Regents is not immune from equal protection scrutiny, Hadley v. Junior College District, *supra;* Barnes v. Board of Directors of Mount Anthony Union High School, 418 F.Supp. 845 (D. Ut. 1976), we conclude that analysis of that selection process for conformity with the dictates of the 14th Amendment of the United States Constitution is entirely inappropriate within the procedural setting and practical time constraints of this petition for writ of mandamus.

Tam has petitioned the Nevada courts for a writ of mandamus to compel respondent Colton to accept his declaration of candidacy to run on an at-large basis. Since NRS 396.040 specifically requires a candidate to run in his residence district, Tam's petition is in effect twofold: (a) he seeks first a declaratory judgment that NRS 396.040 and 396.041 are unconstitutional, and (b) he then seeks judicial imposition of a specific remedy for that unconstitutionality: abolishment of all districts and election of the Board on an at-large basis.

Nevada, like many of its sister states, has accepted the viability of Mandamus as a vehicle for challenging the constitutional validity of a statute. McDonald v. Beemer, 67 Nev. 419, 220 P.2d 217 (1950); Colton v. District Court, 92 Nev. 427, 552 P.2d 44 (1976); 52 Am.Jur.2d, § 95, pp. 418–420. To require a litigant first to seek a declaratory judgment and then to seek mandamus, it is said, is to needlessly hamper the timely vindication of important rights and to unduly burden the courts with a multiplicity of related legal actions.

However, this judicially-fashioned "procedural short-cut," combining traditional declaratory judgment and mandamus proceedings, is based squarely on the premise that once the constitutional violation is established (declaratory judgment), the remedy therefor (mandamus) is both self-evident and exclusive. It is precisely the failure of this basic premise in this case which renders Mandamus wholly inappropriate. For it becomes apparent upon analysis that even if we were to find the selection process unconstitutional in this case, any remedy we might impose in the few months remaining before the November 1978 elections would involve both a denial of due deference to the legislative branch of state government, and an over-stepping of our own judicial powers, both in duty and practical competence.

Tam's proposed solution, that we mandate an at-large election of the Board of Regents in the 1978 elections, is subject to two infirmities. First, once a court declares an apportionment scheme at odds with the 14th Amendment, it is clear that the legislature must be accorded the opportunity to correct the constitutional defects in the selection scheme. Wise v. Lipscomb, 434 U.S. 1329 (1977) (per Powell, Circuit Justice); Wallace v. House, 515 F.2d 619, reh. den. 521 F.2d 816 (5th Cir. 1975), Visnich v. Sacramento County Board of Education, 112 Cal.Rptr. 469 (Cal.App. 1974); see, State v. Zimmerman, 128 N.W.2d 16 (Wis. 1964). The legislature, however, is not in session, nor will it be before the November 1978 elections, some three months away. Thus, if we were now to declare the present selection process improper, we would leave the state without a valid election scheme, unless we were to institute some alternative scheme on our own authority. Such action on our part, however, in denying the legislature the opportunity to fashion an acceptable selection scheme, would be in complete violation of our duty of deference to that branch in matters peculiarly within its particular concern and competence. Yorty v. Anderson, 384 P.2d 417 (Cal. 1963); see also, Silver v. Brown, 405 P.2d 132, 137 (Cal. 1965).

Further, even if we were to improperly arrogate to ourselves the authority to devise and impose a remedy for the alleged constitutional violation in this case, it is clear that Tam's suggested solution, at-large elections, would be the least preferred election scheme, since multimember or at-large schemes often operate to dilute or cancel out the voting strength of racial or political elements of the voting population. Wise v. Lipscomb, supra; Paige v. Grey, 437 F.Supp. 137 (D.Ga. 1977); Blacks

United for Lasting Leadership, Inc. v. City of Shreveport, 71 F.R.D. 623 (D.La. 1976).

Finally, given that the campaigns for the November elections are already in full swing, and that this case arises in the very midst of the election process, the time necessary to conduct the detailed hearing which would be necessary were we to attempt a redistricting on our own would substantially impair, to say the least, the stability of the political election process in this state. As stated by the California Supreme Court in Legislature v. Reinecke, 99 Cal.Rptr. 481, 485 (1972):

> "Reapportionment . . . is an extremely complex matter, for innumerable plans could be adopted that would satisfy the one man-one vote requirement. Before this court, in the discharge of its duty to insure the electorate equal protection of the laws, undertakes to draft reapportionment plans of its own, it should accord all interested parties an opportunity to be heard. The court should be fully informed with respect to all possible criteria that might be adopted for reapportionment, and with respect to all the specific implementations of such criteria that might be ordered into effect. Insofar as the 1972 elections are concerned, there is obviously insufficient time . . . for this court to allow all interested parties to be heard, to resolve the conflicting contentions presented, and to translate its conclusions into concrete reapportionment plans. . . ."

We conclude, therefore, that the procedural setting and the time constraints involved in this case render impossible a proper assessment of the appellant's claims and the imposition of any acceptable remedy if he should prove ultimately successful. We shall, therefore, affirm the district court's denial of the petition for writ of mandamus.

Affirmed.