WISE ET AL. *v.* LIPSCOMB ET AL.

No. A–149.   Decided August 30, 1977

See: 551 F. 2d 1043.

MR. JUSTICE POWELL, Circuit Justice.

This is an application for a stay of the judgment and recall of the mandate of the United States Court of Appeals for the Fifth Circuit.   That judgment directs the District Court for the Northern District of Texas to require the exclusive use of single-member districts in the election of the Dallas City Council.   Applicants, the Mayor and City Council of Dallas, contend that any redistricting pending review by this Court could have the effect of mooting the case and defeating this Court's jurisdiction.

I

Before 1975 the 11 members of the Dallas City Council were elected by an exclusively at-large system of voting. Eight places on the ballot were reserved for candidates who resided in one of the city's eight residential districts.   Three seats, including the Mayor's, were open to candidates regardless of residence.   Voting for all 11 seats was citywide.   For many years Council elections have been nonpartisan, involving slating groups rather than political parties.   Electoral success has depended in major part upon support of one such group, the Citizens' Charter Association.

Plaintiffs representing Negro citizens of Dallas challenged this election system in 1971. Certain Mexican-Americans intervened, but were dismissed from the case for failure to respond to interrogatories. In 1975, the District Court concluded that the at-large election system unconstitutionally diluted the vote of Dallas' Negro citizens. The court rested this conclusion on findings dealing with the geographic concentration of Negroes within the city, the effect of slating groups, and the city's history of *de jure* discrimination.

Instead of formulating its own districting plan, the court afforded the City Council an opportunity to enact a valid plan. The Council duly adopted an ordinance that provides for election of a Council member from each of eight single-member districts, the remaining three to be elected from the city at large. After careful examination of this plan, the District Court approved it. The court observed that single-member districts generally are preferable, but concluded that several facts weighed in favor of the city's new system. First, the court noted that any plan which did not consider the effect on Mexican-American voters might itself be constitutionally suspect. Indeed, detailed consideration of the plan's effect upon those voters, who were more geographically dispersed than Negro citizens, convinced the District Court that their electoral power would be enhanced. Second, the new plan permitted some citywide representation in a body that functioned as a legislature for the entire city. At-large voting in Dallas dated back to 1907, and there was no showing that its use in the new plan would have adverse effects on any minority. The court found a recent marked improvement in the political participation and general posture of minority groups in Dallas.[1]

On appeal, the Court of Appeals reversed. 551 F. 2d 1043 (1977). Relying primarily on *East Carroll Parish School Bd.*

---

[1] As noted in the opinion of the District Court, the racial composition of the Dallas City Council in 1975 was two Negroes, one Mexican-American, and eight whites. 399 F. Supp. 782, 787 n. 5 (1975).

v. *Marshall*, 424 U. S. 636 (1976), and apparently drawing no distinction in this respect between court-ordered and legislatively enacted redistricting, the court held that absent unusual circumstances single-member districts are to be preferred. It concluded that no such circumstance existed. The case thereupon was remanded with instructions that the city redistrict itself into an appropriate number of single-member districts. A rehearing was denied, and a requested stay of mandate was refused.

## II

Applicants level three charges of error at the judgment below. First, they contend that the Court of Appeals improperly ignored the distinctions drawn by this Court between state-enacted and court-ordered reapportionment plans. Applicants further argue that the court erroneously held that the city, in fashioning a remedy to correct unconstitutional dilution of the voting rights of one minority group, cannot consider the remedy's impact on other groups in the absence of an adjudication that the other groups' rights also were impaired unconstitutionally. Applicants' final claim is that the court below erred in failing to consider the city's need for some citywide representation.

This Court has declared repeatedly that the standards for evaluating the use of multimember and at-large voting plans differ depending on whether a federal court or a state legislative body initiated the use. *E. g., Chapman* v. *Meier*, 420 U. S. 1, 18 (1975); see *Connor* v. *Finch*, 431 U. S. 407, 414 (1977). When a federal court imposes a reapportionment plan upon a State, single-member districts are preferable in the absence of unusual circumstances. *East Carroll Parish School Bd., supra,* at 639. But "legislative reapportionment is primarily a matter for legislative consideration and determination," *Reynolds* v. *Sims,* 377 U. S. 533, 586 (1964). When the State accepts this responsibility, its decisions as to the most effective reconciling of traditional policies should not

be restricted beyond the commands of the Equal Protection Clause. *Burns* v. *Richardson,* 384 U. S. 73, 85 (1966); cf. *Connor* v. *Finch, supra,* at 414–415. The Court of Appeals, by holding the Dallas City Council to the "unusual circumstances" test of *East Carroll Parish School Bd.,* appears to have confused these two standards.[2] While we have never explicitly held that municipal election plans are entitled to the same respect accorded those of state legislatures, there is reason to believe that they should be. We indicated as much in *Chapman* v. *Meier, supra,* at 27:

> "[R]eapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court." (Citing *Reynolds* v. *Sims, supra.*)

See also *Dusch* v. *Davis,* 387 U. S. 112, 116–117 (1967).

The two additional errors advanced by applicants also may have merit. The view of the court below that a plan's effect on various minority groups can be considered only after an adjudication of unconstitutional impairment as to those groups may be incompatible with the rationale of our recent decision in *United Jewish Orgs.* v. *Carey,* 430 U. S. 144 (1977).

---

[2] The distinction is between a court-*ordered* plan, which may or may not have been proposed by a legislative body, and a court-*approved* plan, which has been initiated and promulgated as law by the legislative body. *East Carroll Parish School Bd.* involved the former, and this Court noted that "in submitting the plan to the District Court, the [police] jury did not purport to reapportion itself in accordance with the 1968 enabling legislation . . . , which permitted police juries and school boards to adopt at-large elections." 424 U. S., at 639 n. 6. Here, by contrast, "[t]he district court approved the City's plan for relief, which was enacted as a city ordinance following the court's decision that the prior system was unconstitutional." 551 F. 2d 1043, 1045 (CA5 1977). Thus, a rule of limited deference to local legislative judgments is appropriate in this case, for as we held in *Burns* v. *Richardson,* 384 U. S. 73, 85 (1966), "a State's freedom of choice to devise substitutes for an apportionment plan found unconstitutional, either as a whole or in part, should not be restricted beyond the clear commands of the Equal Protection Clause."

See also *Gaffney* v. *Cummings,* 412 U. S. 735, 752–754 (1973).[3]
Moreover, no apparent weight was given the express findings
of the District Court with respect to the legitimate interest of
the city in "having some at-large representation on [its] City
Council." 399 F. Supp. 782, 795 (1975).[4] I had thought it
clear that a federal court reviewing a reapportionment plan
should consider and give appropriate weight to any valid state
or municipal interest found to be furthered by the plan under
consideration. See, *e. g., Reynolds* v. *Sims, supra,* at 578–581.
Citywide representation appears to be such an interest. Cf.
*Dusch, supra; Fortson* v. *Dorsey,* 379 U. S. 433, 438 (1965).

### III

The general principles that guide a Circuit Justice with
respect to stay applications are well settled. The judgment
of the court below is presumed to be valid, and absent unusual
circumstances we defer to the decision of that court not to
stay its judgment. Moreover, the party seeking a stay bears
the burden of advancing persuasive reasons why failure to
grant could lead to irreparable harm. In light of the fore-
going considerations, the Circuit Justice must make a judg-
ment whether there is a "reasonable probability that four
members of the Court will consider the issue sufficiently

---

[3] The opposition to the new plan of certain Mexican-American voters
does not render the District Court's findings in this respect automatically
invalid. Those intervenors were never certified as the representatives of
any class.

[4] After alluding to the evidence and to the concession by the plaintiffs
(who themselves had proposed a plan involving the citywide election of
the member of the Council designated as Mayor), the District Court found:
"The Court believes and so finds that there is a legitimate governmental
interest to be served by having some at-large representation on the Dallas
City Council; that this governmental interest is the need for a city-wide
view on those matters which concern the city as a whole, e. g., zoning,
budgets, and city planning; and that three at-large members do not render
the city's plan constitutionally infirm." 399 F. Supp., at 795 (footnote
omitted).

meritorious to grant certiorari." *Graves* v. *Barnes,* 405 U. S. 1201, 1203 (1972) (POWELL, J., in chambers).

I think there is a reasonable probability that at least four Members of the Court will vote to grant certiorari in this case. The case involves a major city that has adhered to its tradition of at-large elections since 1907.[5] As indicated above, the Court of Appeals may well have thought that the principles applicable to a state legislative redistricting did not apply with full force to such action by a city council. It also appears likely that established principles of general application in the redistricting cases were not applied correctly. Applicants also claim irreparable injury unless a stay is granted. Although the next regular election is not scheduled until April 1979, if the judgment of the Court of Appeals is not stayed, experience indicates that respondents will press promptly for a special election. In their response to this application, they comment that a stay "would unjustifiably prolong" an appropriate remedy. If the remedy ordered by the Court of Appeals were effectuated, the issues presented here probably would be mooted. In any event, in a situation of this kind the capacity of the incumbent Council to function effectively in the public interest may be impaired if the judgment is not stayed.

I will, therefore, enter an order recalling the mandate and staying the judgment of the Court of Appeals pending disposition of the petition for certiorari.

---

[5] The District Court found:

"[A]t-large voting, especially on the municipal level has been an integral part of Texas local governments [since 1907 in Dallas] and . . . at large voting schemes have their genesis in reasons other than those racially motivated." *Id.,* at 797.