**Renn DRUM et al., Plaintiffs,**

**v.**

**J. Brian SCOTT et al., Defendants.**

**No. C–221–WS–71.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Argued Jan. 14, 1972.

Decided Feb. 3, 1972.

Renn Drum, pro se and for other plaintiffs.

Robert Morgan, Atty. Gen., James F. Bullock, Deputy Atty. Gen., and Thomas W. Earnhardt, Associate Atty., N. C. Dept. of Justice, Raleigh, N. C., for defendants.

Before CRAVEN, Circuit Judge, and GORDON and JONES, District Judges.

CRAVEN, Circuit Judge:

This is a class action brought against members of the North Carolina State Board of Elections and the Secretary of State of North Carolina to have N.C.G. S. § 163–201 declared constitutionally invalid and to enjoin state officers from conducting primaries and elections for Congressmen under the enacted scheme. We hold N.C.G.S. § 163–201 to be not in violation of the equal protection clause of the Fourteenth Amendment, and to be a constitutionally sufficient compliance with the legislative duty to reapportion.

The facts are not in controversy. The 1970 official census of the United States showed the population of North Carolina to be 5,082,059. North Carolina is entitled to elect 11 Congressmen to the Congress of the United States. An arithmetical division of population results in a congressional constituency of 462,005.34. The 1971 General Assembly redistricting plan (N.C.G.S. § 163–201) does not achieve arithmetical equality as between the 11 congressional districts. The largest district contains 2.12 percent more people then the average, and the smallest district contains 1.67 percent fewer. The disparity between the largest and the smallest district is, thus, 3.79 percent. Expressed in terms of persons, the Eighth Congressional District contains 454,275 persons (smallest), and the Tenth Congressional District contains 471,770 persons (largest). Thus, there are 17,502 more persons in the Tenth District than in the Eighth District. The arithmetical deviation from perfect mathematical equality is 1.01 percent.

Several other redistricting proposals were considered by the General Assembly. All of them contemplated adherence to established county lines, and plaintiffs do not urge the necessity of dividing a county or counties in order to achieve sufficient equality of representation. Indeed, plaintiffs concede that ignoring county lines might well increase the danger of invidious gerrymandering. See Kirkpatrick v. Preisler, 394 U.S. 526, 534, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969) (White, J. dissenting). But plaintiffs do insist that other plans under consideration by the Legislature would have achieved greater equality. It is undisputed, for example, that Plan E (Exhibit E) would have resulted in an average deviation from ideal equality of .4954 percent, whereas the plan enacted contained an average deviation from perfection of 1.01 percent. The difference between the "best" plan considered by the Legislature and that finally enacted is thus approximately one-half of one percent.

Were it not for Kirkpatrick v. Preisler, *supra,* and Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969), we might well consider the complaint a frivolous one, for the difference between the biggest and smallest district under the enacted plan is only 17,502 persons, whereas the difference between the biggest and smallest district under the "best" plan is 13,361 persons. The net disparity of persons as between the two plans is thus only 4,141, which seems not very large in relation to an average population per district of 462,005. However, these decisions require a close comparison between North Carolina's reapportionment scheme and those struck down in *Kirkpatrick* and *Wells.*

The sweeping language of *Kirkpatrick* to the effect that no unexplained deviation from absolute equality of population

per district will be permitted absent a showing that such deviation resulted despite a good faith effort to avoid it was written in a factual context not at all the same as that confronting us.

These are the most important differences:

Missouri's plan, formulated in 1967, was based on the 1960 census, but, worse, not even those obsolete figures were adhered to when they might interfere with expedient political compromise. At least one Missouri legislator deemed it proper to attempt to achieve a two percent level of variance rather than to even seek population equality. Whenever it served political compromise, the Missouri Legislature made "haphazard adjustments" to a scheme only purportedly based on actual population. Sometimes Missouri took into account the number of students and military personnel within a district, and at other times it did not do so. In Missouri the difference between the least and most populous districts was 25,802 persons. In percentage terms, the most populous district was 3.13 percent above the mathematical ideal, and the least populous was 2.84 percent below.

The goal is "equal representation for equal numbers of people," Wesberry v. Sanders, 376 U.S. 1, 18, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964), and "as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's," 376 U.S. at 8, 84 S.Ct. at 530. The "as nearly as practicable" standard requires that the state make a good faith effort to achieve mathematical equality. That was not done in Missouri, but we are inclined to think it was done in North Carolina. The plus and minus disparity in Missouri was 5.97 percent, whereas the disparity in North Carolina was 3.79 percent. But much more importantly, the North Carolina disparity is "true," whereas the Missouri disparity, larger though it is, must have been far greater than indicated because of obsolete census figures and haphazard adjustments to them.

In Wells v. Rockefeller, supra, New York's reapportionment plan was examined and found inadequate. This case was argued with Kirkpatrick and is in every sense a companion case. The New York Legislature divided the state into seven regional "substates," achieving arithmetical equality within each region, but enormous deviations between the largest and smallest district within the state. The maximum deviation above the state mean was 6.488 percent, and the maximum deviation below the state mean was 6.608 percent, or a total discrepancy variation of some 13 percent. The largest district contained 435,880 people and the smallest district 382,277 people, for a difference of well over 50,000 persons. Such disparity cannot possibly be considered de minimis and fully justifies the Court's characterization of the constitutional facts as showing the failure to exert good faith effort to achieve equality.

■■ Kirkpatrick and Wells curtail, but do not destroy, the "de minimis" concept. The state need not justify "each variance, no matter how small" unless it appears that the state has not made a good faith effort to achieve mathematical equality. Kirkpatrick v. Preisler, supra 394 U.S. at 531, 89 S.Ct. at 1229. We do not think that a good faith effort means that the scheme chosen must be that which results in the most numerically equal of all possible plans. If that were the test, there would be no room for legislative judgment and discretion; a computer would suffice. Kirkpatrick condemns not all minimal variances, but condemns legislative failure to consider alternatives and preference for a "makeshift bill produced by . . . an expedient political compromise." Kirkpatrick v. Preisler, supra at 531, 89 S.Ct. at 1229.

■ We conclude that North Carolina has made a good faith effort to equitably reapportion. Unlike Missouri, the North Carolina Legislature considered

and debated alternate plans and did not reject "without consideration a plan which would have markedly reduced population variances among the districts." *Kirkpatrick, supra* at 532, 89 S.Ct. at 1229. Read in context, we do not believe that *Kirkpatrick* and *Wells* mean that a state legislature must abdicate its responsibility to a cartographer with an adding machine. Instead, we think a good faith effort to achieve arithemetical equality will suffice absent a showing that alternate plans would *markedly* reduce population variances. Because we consider the variance between the legislative plan and Plan E to be insubstantial and de minimis, and because we find that the Legislature made a good faith effort to equitably reapportion, we hold N.C.G.S. § 163–201 to be constitutional and not in violation of the equal protection clause of the Fourteenth Amendment. Counsel may submit an appropriate judgment.