Robert E. BADHAM, Robert W. Naylor, Eric Seastrand, Aldo Silvestri, Michael W. Cobb, Frank O. Verlot, Donna S. Richardson, Peter Schrager, Jane Baker, Charles A. Meyer, Kirk Lindsey, Donald Driscoll, Roger T. Erickson, D.D.S., Plaintiffs,

v.

MARCH FONG EU, Secretary of State of the State of California, Defendant,

Assembly of the State of California and The California Democratic Congressional Delegation, Defendant-Intervenors.

No. C-83-1126 RHS.

United States District Court, N.D. California.

June 20, 1983.

James R. Parrinello, Charles H. Bell, Jr., Nielsen, Parrinello, Hodgson & Mueller, Marguerite Mary Leoni, San Francisco, Cal., Michael A. Hess, Washington, D.C., for plaintiffs.

Robert E. Murphy, Deputy Atty. Gen., San Francisco, Cal., for defendant Eu.

Joseph Remcho, Remcho, Johansen & Purcell, San Francisco, Cal., for intervenor Assembly.

Jonathan H. Steinberg, Los Angeles, Cal., for intervenor Cal. Democratic Congressional Delegation.

Before POOLE, Circuit Judge, and ZIR-POLI and SCHNACKE, District Judges.

## MEMORANDUM OPINION

Plaintiffs, registered Republican voters in several congressional districts in the State of California, challenge California Assembly Bill 2X ("A.B.2X"), a congressional redistricting bill, on several state and federal constitutional grounds.

A.B.2X was passed by the California Senate and Assembly on December 30, 1982. Its passage was necessary because a predecessor redistricting bill, A.B. 301, had been rejected by the voters in a referendum held earlier in 1982, on June 8. The Governor signed A.B.2X on January 2, 1983, and it was chaptered. On January 5, the Elections Division of the Office of the Secretary of State transmitted copies of the chaptered bill to all Registrars of Voters and County Clerks.

Plaintiffs claim that A.B.2X involved population deviations of 3.283%, in violation of Article I, § 2 of the Constitution of the United States. Those population deviations were purportedly reduced, however, by a series of rather substantial changes made in the law after its passage. On February 22, 1983,[1] a staff member of the Assembly Elections and Reapportionment Committee delivered a list of what the defendants and intervenors call "technical corrections" and census tract maps outlining the changes to the Office of the Secretary of State. The Secretary directed the changes and maps to the Registrars of Voters and County Clerks with the expectation that they will be implemented. These changes reduce the population deviation to .0538% by transferring over 39,000 persons between congressional districts. For example, the most populous district, District 16, transferred 8,593 persons to District 12, the least populous district. Plaintiffs claim that the changes were substantial and illegal. They particularly complain of the transfer between District 16 and District 12, because an amendment made to the bill just before passage, sponsored by Senator Mello, had transferred 8,576 persons from District 12 to District 16, resulting in the large deviation contained in the chaptered bill.

The plaintiffs' amended complaint, filed on March 31, 1983, alleges that A.B.2X and the "technical corrections" made to it violate several state and federal constitutional provisions. The state constitutional violations alleged include: (1) the "technical corrections" implemented by the Secretary of State violate Article III, § 3 and Article XXI, § 1 because the Secretary is usurping the role of the legislature; (b) the reapportionment plan was enacted in violation of Article IV, § 8 because the "three-reading" rule was not followed; (3) the plan violates Article II, § 9 because it contravenes the voters' intent in rejecting Proposition 10 on the June 1982 ballot; (4) the plan violates Article XXI because it does not respect city and county units and contains non-contiguous districts.

Plaintiffs allege the following federal constitutional violations: (1) the "technical corrections" implemented by the Secretary of State violate due process and equal protection; (2) the reapportionment plan's deviation percentage exceeds constitutional limits whether it is the 3.283% under A.B.2X as chaptered or .0538% as implemented by the Secretary; (3) the plan is a political gerrymander.

Because the complaint contained both state and federal claims, the defendant and defendant-intervenors brought motions asking the three-judge court to abstain from deciding the state law issues under *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

In the Ninth Circuit, *Pullman* abstention is appropriate when a three-prong test is satisfied: (1) The complaint "touches a sensitive issue of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." (2) "Such constitutional adjudication can be

---

1. This action was begun on March 4, 1983; there apparently was no public notice of the purported changes until some date thereafter, when the Secretary of State sent them to the various county officials. Thereafter plaintiffs filed their amended complaint.

avoided if a definitive ruling on the state issue would terminate the controversy." (3) The possible determinative issue of state law is doubtful. *See C–Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983); *Canton v. Spokane School District No. 81,* 498 F.2d 840, 845 (9th Cir.1974), *quoting Railroad Commission v. Pullman Co.,* 312 U.S. at 498, 61 S.Ct. at 644.

(1) Sensitive issue of social policy.

■ Reapportionment, which is carried out by the states, is an area in which state courts are encouraged to require and formulate valid plans. *See Scott v. Germano,* 381 U.S. 407, 409, 85 S.Ct. 1525, 1526, 14 L.Ed.2d 477 (1965) (district court should have stayed hand when Illinois Supreme Court had found the composition of the Illinois Senate invalid and retained jurisdiction to ensure a valid plan was created). The fact that a congressional apportionment, as opposed to a state legislative apportionment, is at issue in this case does not make the issue less sensitive. In both cases the federal one-person, one-vote rule applies. *See Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). In both cases, the Supreme Court has found that courts should defer to efforts by the legislature, as long as they are constitutional, when adopting redistricting plans. *See Upham v. Seamon,* 456 U.S. 37, 41, 102 S.Ct. 1518, 1521, 71 L.Ed.2d 725 (1982); *White v. Weiser,* 412 U.S. 783, 794–95, 93 S.Ct. 2348, 2354–55, 37 L.Ed.2d 335 (1973) ("In fashioning a reapportionment plan or in choosing among plans, a district court should not pre-empt the legislative task nor 'intrude upon state policy any more than necessary.'") (*quoting Whitcomb v. Chavis,* 403 U.S. 124, 160, 91 S.Ct. 1858, 1877, 29 L.Ed.2d 363 (1971)). Although the plaintiffs argue that three-judge courts have not abstained in congressional reapportionment cases, none of the cases cited by plaintiffs involved state law issues that would obviate or alter the federal constitutional issue (the second *Pullman* criteria). *See Flateau v.*

*Anderson,* 537 F.Supp. 257 (S.D.N.Y.1982); *In re Congressional Districts Reapportionment Cases* (N.D.Ill.1982) (Exhibit C to Plaintiffs' Opposition to Motion to Abstain); *In re Pennsylvania Congressional Districts Reapportionment Cases,* 535 F.Supp. 191 (M.D.Pa.1982); *Carstens v. Lamm,* 543 F.Supp. 68 (D.Colo.1982).

(2) Avoidance or alteration of the federal constitutional issue.

■ To satisfy the second prong of the *Pullman* criteria, a state court determination need not entirely avoid the federal issue. It is enough that it materially alter the nature of the federal constitutional question. *See C–Y Development Co. v. City of Redlands,* 703 F.2d at 377–380 (abstention might avoid deciding proper remedy for permanent deprivation of property rights, leaving only question of remedy for temporary taking); *see also Bellotti v. Baird,* 428 U.S. 132, 146–47, 96 S.Ct. 2857, 2865–66, 49 L.Ed.2d 844 (1976) ("abstention is appropriate where [deferral to the state courts] '. . . might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'") (*quoting, Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959)).

■ In this case, an issue of state law presents a threshold question which will materially alter the federal constitutional question presented. The plaintiffs have claimed in Count VII of their complaint that the "technical corrections" implemented by the Secretary of State violate the state constitution. A decision on this state law issue will determine whether the three-judge court reviews the reapportionment plan with or without the challenged changes. With the changes the reapportionment plan, according to defendants, has a population deviation of only .0538%—a deviation percentage below that which the Supreme Court has found constitutional.[2]

---

**2.** There is no total percentage deviation that automatically makes a reapportionment plan constitutional. *See Kirkpatrick v. Preisler,* 394 U.S. 526, 530–31, 89 S.Ct. 1225, 1228–29, 22 L.Ed.2d 519 (1969). The plan must achieve one-person, one-vote as nearly as practicable.

The unchanged, or original plan, in contrast, is more in doubt. Its population deviation of 3.283% comes closer to deviations found constitutionally violative.[3] Since this case presents a state law issue which will materially alter the federal constitutional issue, the second prong of *Pullman* is satisfied.

This case also presents three state constitutional law questions that may obviate the federal constitutional issue. Plaintiffs argue that the reapportionment plan violates the "three-reading" rule (Article IV, § 8); that it contravenes the voters' intent in rejecting Proposition 10 (Article II, § 9); and that the plan does not respect city and county units and is non-contiguous (Article XXI). If A.B.2X is found invalid because it violates the California Constitution for any of the above reasons, the federal constitutional questions will become moot. These state law issues thus provide additional reasons for finding the second prong of *Pullman* satisfied.

(3) Doubtfulness of the state law issues.

■ To satisfy the third prong of *Pullman,* the possibly determinative state law issues must be doubtful. *See C–Y Development Co. v. City of Redlands,* 703 F.2d at 380–381; *Pue v. Sillas,* 632 F.2d 74, 78–79 (9th Cir.1980). A state law issue is doubtful if it is "susceptible" of an interpretation that would avoid or modify the federal constitutional question. *See Babbitt v. Farm Workers,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979); *Bellotti· v. Baird,* 428 U.S. 132, 146–47, 96 S.Ct. 2857, 2865–66, 49 L.Ed.2d 844 (1976).

The legality of the Secretary of State's implementation of the changed reapportionment bill is an issue of first impression in California. No California case law or state statute provides a clear answer.

Plaintiffs argue that the "technical corrections" are in fact substantive amendments to A.B.2X and constitute an unconstitutional exercise by the Secretary of the Legislature's power to redistrict. They allege that the Secretary's implementation violates Article XXI, § 1 of the California Constitution ("In the year following the year in which the national census is taken ..., the Legislature shall adjust the boundary lines of the ... Congressional ... districts ...."). They also allege that the Secretary is in violation of Article III, § 3 ("The powers of the state government are legislative, executive and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.").

Defendants offer two theories in response, arguing that California Supreme Court precedent allows a reapportionment statute to be construed to include technical corrections; and that Cal.Election Code § 30000 permits them. Neither theory is without doubt, however. In adopting temporary reapportionment plans, the California Supreme Court has allowed incorporation of technical corrections in order to carry out legislative intent. *See Silver v. Brown,* 63 Cal.2d 841, 844–46, 48 Cal.Rptr. 609, 409 P.2d 689 (1966) (maps and census tracts contained errors which constituted a departure from the legislative history); *Legislature v. Reinecke,* 6 Cal.3d 595, 604, 99 Cal.Rptr. 481, 492 P.2d 385 (1972) (*Reinecke I*) (18 clerical errors corrected because the language of the legal descriptions departed from the maps and computer printouts relied upon by the legislature in

---

*See Wesberry v. Sanders,* 376 U.S. 1, 7–8, 84 S.Ct. 526, 529–530, 11 L.Ed.2d 481 (1964). The Supreme Court, however, has approved a plan with a total percentage deviation of .149%. *See White v. Weiser,* 412 U.S. 783, 786, 796, 93 S.Ct. 2348, 2350, 2355, 37 L.Ed.2d 335 (1973).

**3.** A total percentage deviation of 4.13% has been found to violate the constitution. *See White v. Weiser,* 412 U.S. 783, 785, 790–91, 93 S.Ct. 2348, 2350, 2352–53, 37 L.Ed.2d 335 (1973). One three-judge panel has *approved* a plan with a percentage deviation of 3.79%. *See Drum v. Scott,* 337 F.Supp. 588 (M.D.N.C. 1972). However, the fact that the legislative committee was able to draft a plan with a lower percentage deviation makes A.B.2X's 3.238% deviation suspect. *See White v. Weiser,* 412 U.S. at 790, 93 S.Ct. at 2352 (the existence of proposed plans with lower total deviations indicated that it was possible and practicable to construct a redistricting scheme with lower populations among districts).

passing the bill). It has also allowed clerical corrections made by special masters who drew up a reapportionment plan. *See Legislature v. Reinecke,* 10 Cal.3d 396, 401, 110 Cal.Rptr. 718, 516 P.2d 6 (1973) (*Reinecke IV*). And, the court has allowed the temporary use of a judicial plan which included, according to defendants, corrections somewhat similar to those made in the plan at issue here. *See Assembly v. Deukmejian,* 30 Cal.3d 638, 180 Cal.Rptr. 297, 639 P.2d 939 (1982). *Silver, Reinecke I,* and *Reinecke IV,* however, were not faced with the question at issue here: whether post-enactment changes, including shifts in population among districts to more closely comply with the one-person, one-vote standard, can be made other than by the legislature, particularly when there is evidence that legislative intent may have been something quite different. And *Deukmejian* expressly did not pass on the merits of the apportionment plan implemented by that case.

The application of Election Code § 30000 is similarly doubtful here. The statute provides:

"Any maps describing the boundaries of the districts, as contained in this division, which have been prepared by the Legislature or a committee of the Legislature in connection with the enactment of this division may be deposited with the Secretary of State in order to illustrate the boundary lines set forth in this division. Maps deposited with the Secretary of State pursuant to this section may be used by the Secretary of State and the several county clerks for the purposes of assisting in the interpretation of this division and to facilitate the Secretary of State and county clerks in their administrative functions involved in the conduct of elections."

Plaintiffs argue that Election Code § 30000 does not permit the Secretary to adopt congressional districts that depart from the language of the bill as chaptered. Defendants offer a different interpretation. They argue that the statute's provision for the Secretary's interpretation is license for departure from the literal words of the bill as chaptered; that the Secretary has interpreted the bill to include the "technical corrections" and that her interpretation should be given deference; and that the legislature passed this statute with the knowledge that its identical predecessor had been interpreted similarly. These differing constructions of the statute put its application to this case in doubt.

Since Election Code § 30000 may be "susceptible" of an interpretation that would modify the federal constitutional question, the third prong of the *Pullman* test is satisfied.

Some of the other state law issues involved in this case are also doubtful. Plaintiffs argue that A.B.2X is void because it violates the "three-reading" rule of Article IV, § 8 of the California Constitution. It will be necessary to decide whether *People v. Peete,* 54 Cal.App. 333, 369, 202 P. 51 (1921) (rejecting a challenge to an earlier three-reading rule) controls the present case.

Plaintiffs also attack A.B.2X as violative of Article II, § 9 of the constitution because it contravenes the voters' intent in rejecting Proposition 10. The California Supreme Court has said the new measure must be "essentially different" from the rejected provision and enacted "not in bad faith, and not with intent to evade the effect of the referendum petition." *Assembly v. Deukmejian,* 30 Cal.3d at 678, 180 Cal.Rptr. 297, 639 P.2d 939. Lower California courts have applied this test. *See Martin v. Smith,* 176 Cal.App.2d 115, 119–21, 1 Cal.Rptr. 307 (1959). In *Martin,* application involved comparing the two bills, discerning the intent of the voters in rejecting the first bill, and assessing the legislature's motive in passing the second bill. The outcome of such an inquiry is certainly not clear, and in any event, involves sensitive issues of state policy.

Plaintiffs' final state law argument is that the A.B.2X is invalid because it does not respect city and county units and is noncontiguous. Although a recent case discusses similar issues in assessing a reapportionment plan, *see Carstens v. Lamm,* 543

F.Supp. 68, 82 (D.Colo.1982), the plaintiffs are alleging a violation of Article XXI, § 1, which has yet to be interpreted by a state court.

■ The rationale of *Pullman* applies most persuasively here. We shall abstain until the state law issues are settled by the state court. We shall, however, retain jurisdiction to resolve whatever federal issues remain.